| | | |
|---|---|---|
| ALEXANDER ALAUX, | : | NO. 8,270 |
| versus | : | COURT OF APPEAL |
| T.P. THOMPSON | : | PARISH OF ORLEANS |

WILLIAM A. BELL, JUDGE:

2/22

BY: WILLIAM A. BELL, JUDGE:

Plaintiff herein sues defendant upon an alleged verbal contract for the price of a large painting on a one-piece canvas, 9' x 16' which was to represent Bienville in the act of directing or planning the original plot or map of the City of New Orleans. The petition avers that defendant, on or about January 15, 1917, engaged plaintiff, an artist in the City of New Orleans, to execute this work for the price of Two Thousand Dollars, the amount sued for; that defendant agreed to furnish, and did furnish plaintiff, in March or April of the same year, a special canvas, upon which the painting was to be made; that beside the artistic work necessary to the execution of the painting, the conception of its subject: "The Founding of New Orleans by Bienville," entailed considerable amount of historical research, in order to correctly portray the scene, as desired by the defendant, all of which work was done by plaintiff; that prior to the execution of the work, or painting, upon the canvas, plaintiff submitted to defendant various pencil sketches, which were approved by defendant, all in accordance with suggestions made by defendant in the course of the work. It is finally alleged that upon the completion of the painting, same was tendered to defendant, who failed to call for same, and refused to advise or direct plaintiff as to where the painting should be delivered to him, or to pay for same, notwithstanding amicable demand.

The only defense to this suit is a denial to each paragraphical allegation in plaintiff's petition. The record, as it comes to us, however, further discloses a plea of one and three years' prescription, which was not considered by the judge a quo, plaintiff's counsel having successfully urged the Court to disregard same because filed after unanimous verdict and judgment for $2,000, as prayed for. The pleas of prescription were not urged in either argument or briefs before this Court.

518

Exceptions not passed on in the Court below will not be considered by the Appellate Court. 140 La. 674; 111 La. 213; 131 La. 196.

The pertinent pleadings found in the record reduce the issues in this case, upon an action ex contractu, to the clean out question of fact - whether the defendant did, or did not, order the painting to be executed by plaintiff at the price sued upon. The jury found that he did; there was judgment accordingly, followed by denial of motion for new trial.

The testimony of the plaintiff, his two daughters, and a citizen of undoubted integrity, composes all of the direct evidence in support of plaintiff's petition. Their declarations under oath are clear, unambiguous, consistent, and most positive on at least one all-important fact, that is, the defendant's intention to order such a painting as was executed by plaintiff. Three of these witnesses are positive and unshaken that defendant carried out this intention by direct verbal instructions for the work to be done at the price mentioned. The two, and only witnesses for the defense were the defendant himself, and the Curator of the Louisiana State Museum. The testimony of defendant given under his direct and cross-examination, as well as his examination under Act 126 of 1908, is found by us to be uncertain, evasive, and in many instances, contradictory. While his response to this suit is, as above stated, positive and clear in its denial of plaintiff's allegations, the record discloses undoubted attempts during the trial of this cause, over plaintiff's protest, to change the issues in this case, and to show, though unsuccessfully, that the contract, if made, was not for himself, but for another, under an agency, neither pleaded nor proven - N.O. Brewing Co. v. Oldstein, 12 Orleans App. 323.

Plaintiff and his two daughters testify positively to the fact that on January 15, 1917, defendant called at plaintiff's studio. This particular visit is admitted by defendant, who claims, however, that he called on the date mentioned for the purpose of consulting plaintiff about certain other pieces of work, among which was one he had been commissioned to order for account of the Touro-Shakespeare Alms House, a portrait of Mrs. Gumble. We quote in part from his testimony:

"Q. "You did go to Mr. Alaux's house, in January, 1917, as he states?"

A. "Yes."

Q. "What happened when you went there, what did he say, and what did you say?"

(Objection by counsel for plaintiff).

x x x x x x x x

BY THE COURT:

"Now state what took place on that day."

A. "On that day we discussed the copying of a photograph which I had - - - -"

In another part of his testimony, and while under cross-examination concerning a certain manilla envelope (Rec. Exhibit "A - 1") admitted by defendant to have contained a certain photograph of Mrs. Gumble, he further testified as follows:

Q. "Do you know where the envelope came from?"

A. "When I called at the studio as stated, with reference to the picture of Mrs. Gumble, I brought this picture with me."

In subsequent portions of defendant's testimony, we find that he positively denies having brought the photograph of Mrs. Gumble to plaintiff's studio until the following month of May, but the above quoted testimony as well as that given

520

by plaintiff and his two daughters on rebuttal, convince us
that defendant's first statement is the correct and true one,
and that the manilla envelope and its contents, first came
from defendant's hands into the custody of plaintiff, on
January 15, 1917, not in May, as finally stated by defendant.

The incident of the manilla envelope, and the
pencil endorsements thereon, would be entirely inconsequential,
and not worthy of the space we have herein devoted to its dis-
cussion, if it did not serve to convince us that on the same
date upon which the Gumble portrait was under consideration,
that defendant planned and contracted for the painting involved
in this suit, agreeing, in fact requiring, at the same time,
that the work should be done on a large one-piece canvas, ul-
timately paid for, by and with the approval of the Board of
Curators of the Louisiana State Museum. It may also be here
noted that defendant's testimony as to who was the real pur-
chaser of the canvas just mentioned, is surprisingly evasive
and contradictory. On this subject he testifies in part, as
follows:

Q. "Did you have anything to do with the
 purchase of the canvas?"

A. "Nothing whatever. The canvas purchase was
 incidental to the fact that it was part
 of the painting of the picture, and he
 didn't have the money to pay for the can-
 vas, but I had nothing whatever to do with it.
 I am the president of the Museum, and not
 the curator. I do not stay at the Museum, I
 go there about once a week, and Mr. Glenk
 brought the matter officially to my at-
 tention about getting studio room and can-
 vas, and it was then our usual custom to
 help artists - - -"

 (Objections by counsel for plaintiff).

THE COURT:

 "You can tell anything that is pertinent to
 the purchase of the canvas, anything you
 know about it."

A. "This canvas was bought by Mr. Alaux, and in
 fact, I would say the "Alauxs," because the
 daughter and Mr. Alaux painted together on
 the canvas. The cost of the canvas was dis-
 cussed by Mr. Glenk with me, and I said
 "all right" - - - - "

(Objections by counsel for plaintiff).

A. (continued) "At the request of Mr. Alaux, he was permitted to make use of the Museum, of which Mr. Glenk is practically manager -- the man in charge -- the curator. I want to say that, while I am the president of the Board of Curators, they meet but once a month, and following the purchase of this canvas, we reported that we had purchased this canvas for the Bienville picture, proposed. That is all of the understanding of the purchase of the canvas that I had." x x x

Such testimony as just quoted cannot be considered as convincing or substantial rebuttal of the positive and consistent evidence offered by plaintiff to the effect that the defendant himself authorized and sanctioned the purchase of the special canvas upon which the painting was executed.

It is urged by counsel for defendant, and specially urged in brief that the greatest amount which could have been awarded by the jury or allowed by the Court was $200, the amount claimed by plaintiff when the work was ordered to be discontinued by defendant in June, 1917, and that it was plaintiff's duty to minimize his loss, if any, by ceasing his labors when part payment as demanded was refused, and when the canvas upon which he was executing the contract was returned -- as the evidence shows -- from the State Museum, where the work was being done, to plaintiff's home, all, however, without plaintiff's request, authority, or sanction.

In fact, we note defendant's brief closes with the alternative appeal "that the judgment be amended and affirmed by reducing same to the sum of $200." Aside from the force which must be given to the findings of the jury and the judgment of the trial court, as well as to the rebuttal testimony of plaintiff and his daughters to the effect that defendant particularly agreed to the advance of $200 or ten per cent of the contract price, the argument of counsel for

defendant as above stated demonstrates another and final effort on the part of defendant to qualify and alter the answers or defense of general denial herein pleaded. We do not find, after most careful review of defendant's testimony, or that of his witness, the Museum's curator, that he has succeeded in disproving the allegations of plaintiff's petition, abundantly supported by convincing evidence of a positive and unequivocal contract of employment.

It is suggested that the preponderance of plaintiff's evidence concerning the alleged verbal contract, has been given by parties vitally interested in the suit. Whatever truth there may be in this contention, the witnesses are none the less lawful deponents of the facts, and the weight given to their testimony by both jury and judge must not be disturbed.

The surrounding circumstances of this case are also strongly corroborative of plaintiff's case, as proven by himself and daughters. In Marks v. New Orleans Cold Storage Co., 107 La., 172, where three of plaintiff's witnesses were shown to have been interested witnesses, it was held by the Court:

> "Interested witnesses are by our law competent witnesses, and their testimony is binding on the court, unless overcome by counter testimony, or irreconcilable with the known facts of the case."

The circumstances arising from this case, seem to us, from our appreciation of the record, to have particularly justified a trial by jury, and the unanimous verdict as rendered, should not in any manner be qualified or disturbed. This Court has held in the case of Dupre v. New Orleans, 10 Orleans App. 236, that:

523

> "Where the conflict of evidence
> is resolved against the defendant,
> first by a jury and again on a second
> trial, by the presiding judge, the
> conclusion will not be disturbed on
> appeal unless it is palpably er-
> roneous."

See also: Breen et Ux. v. Walters et al.,
150 La.—91 So. Rep. 50.

### JUDGMENT AFFIRMED.