Statement of the Case.
MONROE, C. J.
Plaintiff has appealed from a judgment rejecting- his demand for damages for personal injury resulting from his falling through a wharf belonging to defendant, a stringer of which broke while plaintiff and others were carrying a piano over it.
*983 The facts of the case are as follows:
In April, 1913, plaintiff and others, members of an unincorporated club, rented from defendant a “camp,” consisting of a wooden building, situated on, or in, Lake Ponchartrain, at a distance of 209 feet, or more, from the shore, with which it was connected by a wharf, between 3 and 4 feet wide, built on piles, eight feet three inches distant from each other, with stringers nailed to them, and planks laid across the stringers. The camp was first rented for April, May, and June, and, then, by the month, for July and August, when the club gave it up, but left within it a small upright piano weighing only 466 pounds, of which they were the owners. Thereafter, at different times, defendant requested the president of the club to have the piano removed, and on October 12, 1913, he was notified that they were ready to move it, and he accompanied • the president and five other members, including plaintiff from the city to the lake in order to facilitate them in so doing by opening the building; but he made no suggestions as to the manner of the removal and gave no warning that it would be unsafe for them to carry it over the wharf, instead of rolling it, or getting it out in some other way. They undertook to carry it out — two of them, including plaintiff, taking the upper end, and four, the lower end, which, latter, contained the machinery, and about two-thirds of the -weight, the piano being held horizontally, on its side, with its top to the front. Moving in that way, plaintiff and his fellow carriers had passed on to the third section of the wharf while the four men behind were still on the second section, or, perhaps, at the line between the two, when one of the stringers broke, and plaintiff and his mate, with the piano, were precipitated into the water, leaving the others where they were, with the result, as to plaintiff, that he suffered a complete fracture of one of his shoulder blades, by reason of which he was laid up for a week, was obliged to carry his arm in a sling for nearly a month, suffered a great deal of pain, and was still suffering, more or less, and somewhat disabled in February, 1915, when the case was tried. It is shown that the stringer that broke was rotten ; that if it, and the other timbers, had been sound, the wharf, should readily have supported several times the weight that was thus imposed upon it; that the wharf had been built several years before; and it is not shown that it had ever been inspected or repaired. It is further shown that the previous tenant (defendant’s nephew) had a piano there which was removed by defendant, himself, and, though it appears that only-three men were employed to take it in, and out, and hence that they rolled it, it does not appear that defendant, who saw plaintiff and his friends carrying their piano out, made any suggestion to them that rolling would be the safer way. Quarrella, a witness called by defendant, testifies that he owns nine camps, and rents them, furnished or unfurnished; that it is customary to take pianos over the wnarves; that they generally roll them, but that he would not allow any one to roll a piano over a wharf of his, unless he were notified. He does not say, nor does any one else, whether rolling or carrying is better for the wharf. Being asked what is the usual life of such wharves, he replied, “Well, every year, I go over mine; sometimes, every six months.” On the other hand, the most that defendant could say about his wharf was that he thought it had been built in 1911, but was not sure; that it was built of fine lumber; that no one notified him that there was anything the matter with it, and he did not know that it was rotten.
Opinion.
Tire owner is bound to know whether his building is safe for the purposes for which *985 he rents it, or authorizes its use, or is rotten and unsafe, and is answerable, in damages, to those who, being lawfully therein, are injured by reason of its defects, whether of original construction or caused by failure to make proper repairs. Whether, at the time of the accident, plaintiff enjoyed the rights of a tenant, is immaterial, for he and the other members of the club were lawfully on the premises, engaged, at defendant’s repeated -request, in moving their piano, in a manner to which defendant, who was present, made no objection and which is not shown to have been more unsafe (as to the wharf) than any other manner. According to the law and the jurisprudence, defendant is liable for such amount as will compensate plaintiff for the pecuniary loss and physical injury that he has suffered by reason of the accident. C. C. 670, 2322; Tucker v. I. C. R. Co., 42 La. Ann. 115, 7 South. 124; Lawson v. Shreveport Waterworks Co., 111 La. 73, 35 South. 390; Schoppel v. Daly, 112 La. 201, 36 South. 322; Cristadoro v. Von Behren’s Heirs, 119 La. 1025, 44 South. 852, 47 L. R. A. (N. S.) 1161; Baucum v. Pine Woods Lumber Co., 130 La. 39, 57 South. 577; Wise v. Lavigne, 138 La. 218, 70 South. 103. And we fix that amount at $1,000.
It is therefore ordered and decreed that the judgment appealed from be annulled, and that there now be judgment in fav.or of plaintiff and against defendant in the sum of $1,-000, with legal interest thereon from judicial demand until paid, and all costs.