(91 South. 50)

No. 23177.

BREEN et ux. v. WALTERS et al.

(Jan. 2, 1922.   Rehearing Denied Feb. 27, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error** ⟨⟩994(2), 1005(1)—**Jury are exclusive judges of credibility of witnesses and approval of judge adds weight to verdict.**

   The jury are the exclusive judges of the credibility of the witnesses, and of the weight and sufficiency of their testimony, and the sanction of the trial judge to their verdict, after hearing the witnesses in the case, adds weight to the presumption of its correctness.

2. **Landlord and tenant** ⟨⟩169(6)—**Evidence held to warrant recovery from landlord for injury to child falling from balcony.**

   In an action for injuries to tenant's child from falling through the banisters of a balcony, evidence *held* to warrant a verdict for plaintiffs.

3. **Landlord and tenant** ⟨⟩150(1) — **No duty rests on tenant to repair balcony in absence of custom.**

   In the absence of a custom to that effect in the community, it is not the duty of a tenant to repair the balustrade of a gallery, and failure to make such repairs is not an act of negligence, under Civ. Code, arts. 2692, 2695, 2716, 2717.

4. **Landlord and tenant** ⟨⟩164(6)—**Landlord bound to know whether building is safe for purpose for which rented.**

   Landlord is bound to know whether his building is safe for the purposes for which he rents or authorizes its use, or is rotten or unsafe, and is answerable in damages to those who, being lawfully therein, are injured by reason of its defects, whether of original construction or caused by failure to make proper repairs, under Civ. Code, arts. 670, 2322.

**5. Negligence ⬤⟶119(6)—Contributory negligence must be alleged.**

It is erroneous to admit evidence of contributory negligence, in the absence of a special plea of such defense.

**6. Negligence ⬤⟶85(3)—Child three years old incapable of contributory negligence.**

In a personal injury action for the use and benefits of a child three years old, contributory negligence is not a defense, as a child of such tender age is incapable of contributory negligence.

**7. Damages ⬤⟶130(3) — $1,000 not excessive for injuries to child's head.**

A verdict for $1,000 was not excessive for injuries to a child three years of age falling 12 feet from a gallery and probably fracturing its skull, and making its eyes black and blue, a condition which usually results from a fracture of the skull at the base, called ecchymosis of the orbitals, and changing it from a lively and friendly child to a quiet and timid one.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Manuel Breen and wife against Milton M. Walters and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

Wm. H. Byrnes, Jr., of New Orleans, for appellants.

Charles Rosen, of New Orleans, for appellees.

LAND, J. Plaintiffs, the father and mother of Cecile Breen, a child aged about three years, have instituted this suit against the defendants to recover the sum of $5,000 as damages for personal injuries sustained by said child as the result of a fall from a second story gallery or balcony, used by plaintiffs in connection with two front rooms of the second floor of the premises No. 1827 St. Andrew street, in the city of New Orleans, leased by plaintiffs from defendants, the owners in indivision of said property and premises.

Plaintiffs allege that said fall was occasioned by the defective condition of said gallery or balcony and the banisters and posts, and that said gallery or balcony and the banisters and posts were rotten, loose, defective, and in a dangerous condition, as defendants well knew; that defendants had promised petitioners to repair same, and petitioners relied upon their promises; that defendants were grossly negligent in allowing them to be and remain in such conditions; that it was their duty as owners and lessors to have put and kept the said gallery or balcony and banisters and posts free from vices and defects, and in a good and safe condition, but that they failed to do so; that petitioners and their child did not know that said gallery or balcony or said banisters or posts were in a dangerous condition; that they and their child were without fault in the premises; and that said accident was due solely to the fault and negligence of the defendants.

Plaintiffs allege that as a result of said fall said child was seriously injured; that she sustained a concussion of the brain, which rendered her unconscious; that said injury closed her eyes for several days; that she sustained other bruises and injuries of the body generally; that she suffered much pain, was confined to a bed in the Charity Hospital for several weeks, and thereafter for many weeks in her home; that she had her sight permanently impaired, her nervous condition and general health deranged, and her mind affected; and that such injuries are permanent.

Defendants, in their answer, admit that they are the owners of the property and premises in question, and that plaintiffs are their tenants as alleged in their petition, but they deny the allegations of plaintiffs' petition as regards the defective condition of the balcony, banisters, and posts, and aver that said balcony, banisters, and posts were not rotten as plaintiffs allege, and that defendants, immediately after the alleged accident was reported to have occurred, examined the said balcony, banisters, and posts, and found them to be in good condition, but defendants found that three of the banisters

had been removed from the railing, and that otherwise the balcony was in good condition.

Defendants also deny the allegations as to the extent of the injuries to the child, and state that they saw the child shortly after the alleged accident, and that the child appeared to be in good health.

Under these issues as raised by the pleadings, the case went to trial, and the jury returned a verdict in favor of plaintiff for $1,000 damages, in solido against defendants. The motion for a new trial was overruled by the lower judge, and defendants appealed.

[1, 2] The jury in this case retired to the scene of the accident, and viewed the premises, before they returned their verdict. They had not only the benefit of the testimony of the witnesses who appeared before them, but of an actual inspection of the condition of the premises in question. The testimony is conflicting, but there is sufficient testimony, if accepted as true, to sustain the verdict of the jury, who are the exclusive judges of the credibility of the witnesses and of the weight and sufficiency of their testimony. The trial judge gave his sanction to their verdict, after hearing the witnesses in the case, which necessarily adds weight to the presumption of its correctness.

The accident occurred between 10 and 11 o'clock November 24, 1916. Mrs. Breen, her husband, and three small children occupied two front rooms on the second floor of the leased premises, with front porch and side gallery. The banisters in the balustrade of the front porch were large and heavy, while those in the railing of the side porch were thin and small.

Cecile, aged three years, fell from this side porch through the railing to the ground, a distance of from 12 to 15 feet, and was severely injured. At the time of the accident, Mrs. Breen was in the kitchen nursing her four weeks old baby. She had another child 18 months old. The children were in the kitchen with their mother before the accident occurred. Mrs. Breen had one servant, Beu-lah Hayes, whose duties were to clean the house and do the washing and ironing. The servant was on the side gallery washing, with her back turned, at the time of the accident. Cecile left the kitchen without her mother's noticing her going out, and walked out on the side gallery. Mr. Breen was absent, out of the city. The servant was not aware that the child was on the side gallery, and did not see her fall, but heard a noise, and, on investigation, discovered the child lying on the ground with a banister clinched in her hand, which she had carried with her in her fall through the balustrade. There was only one banister out of this railing at the time of the accident. Defendants had been requested to have the balustrade fixed before the accident, and had promised to do so, but failed to have the repairs made.

Mrs. Breen ran down the stairs when the servant gave the alarm, and saw Mr. Mitchell pick the child up and try to take the banister out of her hand. She testifies: "I looked at that stick [banister], and it was full of blood, and it was all crumbled, rotten." Beulah Hayes, referring to the banister in the child's hand, testified that it was rotten, and you could take it in your hand at the top, and it would crumble. Ev. p. 47.

In referring to the railing of this side gallery where the accident occurred, Beulah Hayes states that, when she went to work for the Breens one of the banisters were broken out of this railing, and there were three or four which had rotted from the top, and the whole balustrade was loose, and you could shake it with your hand, and that the child could not have fallen through the opening made by the banister which had been broken out, if the others had not given away.

The space left in the balustrade of the side gallery with one banister out was about 8 or 10 inches, and with two out about 16 inches.

Mitchell, a carpenter, the same man who picked the child up, saw the banister in her hand, but did not examine it, and could not

testify as to its condition. However, he placed in three new banisters after the accident at the request of defendants, at the point in the balustrade through which the child had fallen.

In his testimony he has tried to make it appear that the railing of the side gallery, where the accident occurred, was in good condition at the time he repaired same. He admits that the nails in the lower railing were old and rusty and a little drawn. He has also tried to minimize the damage in this case by swearing that when he reached the child it was sitting up; while the mother and the servant both swear that the child was speechless and lying on the ground. Defendants denied on the witness stand that any demand had been made on them to make the repairs prior to the accident. Mr. Breen, Mrs. Breen, Miss G. Breen, and the servant all testify that several demands were made on defendants before the accident occurred. Defendants also attempted to prove by several witnesses that the missing banister in the balustrade of the side gallery was knocked out by furniture being hoisted over the railing when the Breens moved into the house. None of these witnesses testify that such was the fact. They state that a piece of furniture struck the railing of the side gallery while the furniture was being moved in. This is denied by the Breens and by Caplan, who moved the furniture. Moreover, it is shown that the edge of the side gallery projects nearly 5 inches beyond the lower railing.

The child lying prostrate on the ground with the banister clinched in its hand is the strongest kind of testimony as to the defective and dangerous condition of the balustrade at the point of the accident. It is a physical fact in the case, and is more convincing than the testimony of all the witnesses who have sworn as to the good condition of this balustrade.

The testimony in this case is of a very contradictory character. It is conflicting as to the demand made by plaintiffs on defendants to make the repairs; as to the condition of the balustrade at the point of the accident; as to the balustrade being injured by the hoisting of the furniture over it; and as to other minor details.

The jury in this case viewed the premises before rendering their verdict. They heard the witnesses testify on the stand, and noted the manner in which they gave their testimony. The jury found that the facts justified a recovery on the part of the plaintiffs, and the trial judge, who heard the testimony, has approved their verdict, and we see no good reason to disturb their findings.

Article 2716 of the Civil Code reads as follows:

"The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make:

"To the hearth, to the back of chimneys and chimney casing.

"To the plastering of the lower part of interior walls.

"To the pavement of rooms, when it is but partially broken, but not when in a state of decay.

"For replacing window glass, when broken accidentally, but not when broken either in whole or in their greatest part by a hailstorm or by any other inevitable accident.

"To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place."

"Article 2717. The expense of the repairs, which unforeseen events or decay may render necessary, must be supported by the lessor, though such repairs be of the nature of those which are usually done by the lessee."

[3] There is no testimony in the record to show that, according to the custom prevailing in the city of New Orleans, it is the duty of a tenant to repair the balustrade of a gallery. The plaintiffs, therefore, were not bound to make these repairs.

There is testimony, however, showing that the banister was rotten, and therefore the lessor was bound to make such repairs, under the provisions of article 2717, and the jury evidently so found. The repairs in this case were not such as the tenant is required

by law to make, and the failure of the plaintiffs to make such repairs was not an act of negligence on their part.

"The lessor is bound * * * to maintain the thing in a condition such as to serve for the use for which it is hired." C. C. art. 2692.

"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same." C. C. art. 2695.

The jury in this case evidently found that the defects in the balustrade did not arise from any fault of the plaintiffs, the lessees.

[4] In the case of Allain v. Frigola, 140 La. 982, 74 South. 404, this court held that the owner is bound to know whether his building is safe for the purposes for which he rents or authorizes its use, or is rotten or unsafe, and is answerable in damages to those who, being lawfully therein, are injured by reason of its defects, whether of original construction or caused by failure to make proper repairs.

The lessor is responsible in damages to the lessee and his family for personal injuries through violation of his general primary obligations to keep his building safe. Schoppel et al. v. Daly et al., 112 La. 201, 36 South. 322; Wise v. Lavigne, 138 La. 218, 70 South. 103; C. C. articles 670, 2322.

[5, 6] Defendants attempted to prove contributory negligence, without specially pleading such defense. The trial judge erroneously admitted the evidence, but evidently overruled the plea, as we find no instruction as to contributory negligence in his charge to the jury. Moreover, this suit is for the use and benefit of a child three years old, and a child of such tender age is incapable of contributory negligence. Westerfield v. Levis, 43 La. Ann. 69, 9 South. 52; Barnes v. Shreveport City R. R., 47 La. Ann. 1218, 17

South. 782, 49 Am. St. Rep. 400; Rice v. Crescent City R. R., 51 La. Ann. 108, 24 South. 791.

As plaintiffs are, in our opinion, entitled to recover, we will next consider the question as to the amount of damages.

[7] The child was a healthy child before the accident. It fell a distance of from 12 to 15 feet from this gallery to the ground, which was covered with shells. It was speechless and bleeding at the nose when it was picked up at about 11 o'clock on November 24, 1916. This unconscious condition, however, lasted but a short time. The ambulance carried the child to the hospital in about 30 minutes after the accident. It was conscious at the time of its arrival. The interne who examined it had charge of the child from November 24, to December 1st, or 7 days. He made an examination at noon November 24th. The child was conscious at that time; was slightly bleeding from the nose. Both of its eyes were black and blue; not from external injury, but it was a condition which usually results from a fracture of the skull at the base, and is called by the doctors ecchymosis of the orbitals. It is not a black eye; it is a blackening under the skin, and could be due to an injury or blow on some other portion of the head. The medical testimony in the case, however, does not establish a fracture at the base of the skull with any degree of certainty, notwithstanding this symptom, nor was there any depression of the skull. However, the child remained at the hospital for 18 days, slowly improving, but was not fully recovered at the time of its discharge. The family physician treated the child after its return home, off and on until a short time before the institution of this suit, for headaches and a kind of occasional stupor, by which is meant, as explained by the family physician, that the child was quiet and dreary, drooping, but not losing consciousness. Its reflexes were normal. Mrs. Breen

testified that the child had two or three teeth broken, and that her mouth was full of blood; that her eyes were closed, and her nose was bleeding at the time of the accident; that her nose bled frequently after her return from the hospital; that she had headaches often; and from a lively and friendly child she had changed into a very quiet and timid child.

In explaining the condition of stupor that Dr. Geismar referred to in his testimony, Mrs. Breen says:

"She would stand out, and I would tell her something, and she would be standing and looking at me and wouldn't move. She would stand 10 or 15 minutes like this, until I would come and shake her; then she would answer me or she would move."

The family physician testifies that the child is rational and understands, and is normal, with the exception of this stupor and headaches.

There is nothing in the medical testimony to indicate any permanent injury to the child, outside of bare possibilities.

As the verdict for $1,000 damages is not manifestly excessive, it will not be disturbed.

Judgment appealed from is therefore affirmed.

O'NIELL, J., concurs in the result.