## MAY v. SCHEPIS.

### No. 4511.

Court of Appeal of Louisiana.
Second Circuit.

April 28, 1933.

Cas Moss, of Winnfield, for appellant.

Wm. H. Mecom, of Columbia, for appellee.

DREW, Judge.

Plaintiff instituted this suit for damages in the sum of $2,000, with 5 per cent. per annum interest from May 1, 1932, until paid. He alleged that he had leased from defendant a part of the second story of a building in the town of Columbia, Caldwell parish, La., which he used for an office and sanitarium; that he occupied the building as such from the year 1926, until the latter part of April, 1932, when he was forced to move out of said building due to the bad condition of the roof.

He alleged that he paid $50 per month rent for said building and that on April 10, 1932, a heavy rain fell during the night and leaked through the roof to such an extent that the bedding, furniture, and operating equipment in said building became wet and damaged beyond repair. He itemized the damages, amounting to $2,000.

He further alleged that prior to this date the roof had begun to leak and that he had notified the defendant and requested that the roof be repaired, which was not done.

Defendant filed an exception of no cause of action, which was overruled. He then answered, denying that the roof was in need of repairs and that it leaked, and denied that plaintiff had ever notified him that the roof was in need of repairs.

The lower court rejected the demands of plaintiff and he has appealed.

There has been no answer filed to the appeal, and the exception of no cause of action, therefore, passes out of the case.

The opinion of the lower court, which is in writing, is as follows:

"This is a suit brought by Dr. May for damages alleged to have been sustained to his furniture and Sanitarium equipment occasioned by a leaky roof on the building owned by defendant, which building was rented and occupied for the purpose of a doctor's office and sanitarium in the town of Columbia.

"Damages were set out for various items alleged upon in the aggregate of two thousand ($2,000.00) dollars. The defense is that no damages were sustained occasioned by a leaky roof as alleged by the plaintiff, and the defendant set up that his roof was in perfect condition and denied all of the allegations of damage set out by plaintiff. The testimony of plaintiff and defendant is in sharp conflict all the way through. It does not appear from the testimony of outsiders, that the roof was in perfect condition at the time and on the occasion set out by plaintiff; that it did leak, but the proof to sus-

tain the damages is very indefinite, and in fact is so much so that the court is at a loss to know how any judgment could be awarded in the event the court should find that the defendant was liable for the damages.

"It is not necessary, however, to go into this question as to the sufficiency of the proof, as this court will decide the case from another angle. If the plaintiff's contention as to the leaky roof is correct, and if, as he states in his petition and maintains in his testimony, that the roof had leaked on numerous occasions and over a long period of time, it is very evident that this case would fall under a long line of decisions to the effect that the obligation rests upon the plaintiff to repair the roof and deduct the costs of said repair from the rent as it accrues, and in this connection I might say that the proof in the record shows that this repair which might have been necessary to the roof, if any, could have been made at an expense of some twenty or twenty-five dollars, whereas the monthly rental of the building under the contract of lease was fifty ($50.00) dollars per month.

"Dr. May had occupied this building for several years and while he says that he called defendant's attention to the fact that the roof needed repairs, which fact is denied by defendant, yet it was his duty in the event the defendant failed to make the necessary repairs as requested by him, to have done so and deducted the amount of same out of the rent.

"I will briefly call attention to some of the cases upon which this Court will base its decision.

"Brodtman v. Finerty, 116 La. 1103, 41 So. 329, is a case where a distinction is drawn between article 2693 and 2694 of the Civil Code as against article 2695. The case reported in the 4th Robinson 428 (Scudder v. Paulding), deals with leaky roofs and it is held that the lessee should have repaired same and deducted from the rent, which was sufficient to cover it.

"We find a case in the 21 La. Ann. 714 (Westermeier v. Street), holding in the same effect in connection with the leaky roof. We find a case in the 22 La. Ann. 292 (Pesant v. Heartt), holding to the same general doctrine, and which says that the failure to make repair will defeat the claim for damages. Again in the 23 La. Ann. page 59 (Diggs v. Maury), the same doctrine is announced and to the same effect in the 26 La. Ann. 384 (Winn v. Spearing) and the 28 La. Ann. 903 (Welham v. Lingham). The same doctrine is announced in the 33 La. Ann. 1417 in the case of Lewis v. Pepin.

"In the 8th Robinson 168, Shall v. Banks, the ruling is laid down that the lessee must call on lessor to make repairs or put him in default. Talley v. Alexander, 10 La. Ann.

628, holds that default is necessary. To the same effect is Favrot v. Mettler, 21 La. Ann. 220, and Larguier v. White, 29 La. Ann. 159. The same doctrine is found in 163 La. 382, 111 So. 794, in the case of Hartz v. Stauffer et al.

"So with the line of past rulings on this subject we find that the doctrine has been definitely settled that repair of this nature must be made by the lessee and deducted from the rent, and especially so if the rent is sufficient to take care of the repairs, and that a failure to do this defeats recovery.

"I find from the evidence in this case that plaintiff has not proven, by a preponderance of the evidence, that he called upon the defendant to make the repairs as he should have done under the law, because, as stated, Dr. May avers that he did this and the defendant has emphatically denied it. So from the standpoint of the law this court is of the opinion that the plaintiff cannot recover and that for two reasons, because he has not brought himself within the law for this character of case and for the additional reason that if he were entitled as a legal proposition to recover damages, the proof in the record is not sufficiently definite upon which to base judgment for damages, and as stated at the outset, this decision turns upon a legal proposition first above announced. For that reason the demand of plaintiff is refused."

The lower court did not directly pass upon the question of the leaks in the roof, but strongly intimated that the evidence showed that the roof did leak. The evidence leaves no doubt in our minds that the roof did leak and that plaintiff's property was damaged to some extent by getting wet due to the leaky roof.

The decision of the lower court is based on the early jurisprudence of this state, and it cites the following cases to support it: Scudder v. Paulding, 4 Rob. 428; Brodtman v. Finerty, 116 La. 1103, 41 So. 329; Westermeier v. Street, 21 La. Ann. 714; Pesant v. Heartt, 22 La. Ann. 292; Diggs v. Maury, 23 La. Ann. 59; Winn v. Spearing, 26 La. Ann. 384; Welham v. Lingham, 28 La. Ann. 903; Lewis v. Pepin, 33 La. Ann. 1417; Shall v. Banks, 8 Rob. 168; Talley et al. v. Alexander, 10 La. Ann. 628; Favrot v. Mettler, 21 La. Ann. 220; Larguier v. White, 29 La. Ann. 156; Hartz v. Stauffer et al., 163 La. 382, 111 So. 794.

The first eight cases cited above are analyzed by the court in the case of Boutte v. New Orleans Terminal Co., 139 La. 950, 72 So. 513, 514, and it is shown that most of them are not in point with the case at bar, and in that case the following rule was laid down, which has been followed ever since, i. e.: The right accorded a lessee by article 2694, Revised Civil Code, does not impose up-

on lessee any obligation to make the repairs which primarily it is the duty of the lessor to make. For other cases so holding, see Landry v. Monteleon, 150 La. 546, 90 So. 919; Morgan v. Cusimano, 2 La. App. 112; Miller v. Kaiser, 5 La. App. 282; Goldstein v. Stone, 12 La. App. 702, 127 So. 73; Clark v. Greco, 13 La. App. 660, 127 So. 647.

We quote from the opinion in the Boutte Case as follows:

"In support of the contention that the plaintiff is prevented from recovering damages because her mother had the right to have the repairs made to the balcony herself and pay for the same with the rent due to the defendant we are referred to the cases of Scudder v. Paulding, 4 Rob. 428; Westermeier v. Street, 21 La. Ann. 714; Pesant v. Heartt, 22 La. Ann. 292; Diggs v. Maury, 23 La. Ann. 59; Winn v. Spearing, 26 La. Ann. 384; Welham v. Lingham, 28 La. Ann. 903; Lewis v. Pepin, 33 La. Ann. 1422; Brodtman v. Finerty, 116 La. 1106, 41 So. 329; and Bianchi v. Del Valle, 117 La. 591, 42 So. 148.

"The decisions cited have no application to the facts of the case before us. For example, Scudder v. Paulding, 4 Rob. 428, was an action by a lessee to annul the contract of lease and to recover damages for injury to his furniture on account of a leak in the roof of the building. It was held to be the right, not the duty, of the lessee to cause the repairs to be made, after the lessor had been notified and had neglected to have them made. Hence it was held that, as it had been in the power of the lessee to prevent or lessen the damage, and as he had preferred to stand by and let the damage go on, he could not put the loss upon the lessor. This is on the familiar principle that a person cannot base an action for damages, or for the annulment of a contract, upon a condition of affairs which he knew was going to happen and which he could have prevented without cost to himself. But the lessee in the case before us could not have known that the balcony of the premises which she occupied was going to collapse, although she knew it was in need of repairs, and perhaps knew it was in a dangerous condition.

"Westermeier v. Street, 21 La. Ann. 714, was a suit by a landlord to recover the rent due him. The lessee claimed damages in reconvention for the loss of business, on the ground that the building was delivered in a leaky condition. It was held that the lessee had waived his action for damages by taking possession and paying the rent for several months without protest and without notifying the landlord that repairs were needed; and it was said that, if the lessee had refused to make the necessary repairs, the tenant could have caused them to be made and deducted the cost from the rent, and could thus have prevented or reduced the damage of which he complained.

"Pesant v. Heartt, 22 La. Ann. 292, was also a suit by a landlord to collect the rent due him, wherein the lessee claimed damages in a reconventional demand, alleging that his subtenant had been compelled to abandon his portion of the premises on account of its need of repairs. The demand for damages was rejected because the lessee had expressly obligated himself, in the contract of lease, to make the repairs complained of, at his own expense, and the rental had been fixed with reference to that obligation on the part of the lessee. It was said, unnecessarily, that, if the lessee had not expressly assumed that obligation, he would nevertheless have had the right to make the necessary repairs and prevent the loss.

"Diggs v. Maury, 23 La. Ann. 59, was also a suit by a landlord for the rent due him, wherein the lessee claimed in reconvention that his furniture had been damaged because of the need of repairs to the roof. And again it was said that the lessee was aware that the injury to the furniture was going on, and that he could have prevented some, if not all, of the damage, by having the repairs made with the rent which he owed the lessor.

"In Winn v. Spearing, 26 La. Ann. 384, the lessee resisted the demand for rent for the nine months that he had occupied the premises, on the ground that the lessor had failed to make certain repairs. It was held that the lessee had no right to occupy the premises indefinitely without paying rent; that his remedy was to demand that the lessor make the repairs, and if he failed to do so, to make them himself and deduct the cost from the rent due.

"In Welham v. Lingham, 28 La. Ann. 903, all that was decided was that the lessee had no right to abandon the leased premises and refuse to pay the rent because of the lessor's neglect to make certain repairs, which would not have cost more than $50.

"In Lewis v. Pepin, 33 La. Ann. 1422, the lessee's demand for damages on account of a leaky roof was denied because the evidence showed conclusively that, in using the roof as a place for hanging out laundered clothes, the employees of the lessee had stopped up the gutters with old clothes, and had injured the roof by walking on it, and had caused it to leak. The doctrine of all of the foregoing cases, that the lessee could not recover damages which he knew were going on and could have prevented, was affirmed, with a significant expression that, however questionable that construction of article 2694 of the Civil Code might be as an original proposition, it was then too well established to be disturbed.

"Although the foregoing cases were cited in support of the decision in Brodtman v. Finerty, 116 La. 1103, 41 So. 329, they were

not at all appropriate. In this last case, the lessee sued the lessor for damages for an injury inflicted on the hand of the lessee's wife by the falling of a shutter or blind while she was attempting to close it. The complaint was that the lessor had neglected to have a new hinge put on the blind or shutter on the leased building, after he had been notified that it was broken. It is plain that the lessee had no right or cause of action in that case, because the Civil Code expressly provides that it was his duty, and not the duty of the lessor, to make such repairs as were necessary to the windows, shutters, and hinges of the leased premises. Article 2693 of the Civil Code provides that the lessor— 'ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make as hereafter directed.'

"And the next following article declares that, if the lessor does not make the necessary repairs required in the preceding article, the lessee may call on him to make them; and, if he then refuses or neglects to make them, the lessee may (not must) himself cause them to be made, and deduct the cost from the rent due. Then follows the provision that the lessor guarantees the lessee against all vices or defects which may prevent the use of the premises, even though the lessor was not aware of the vices or defects when the lease was made, and even though the vices or defects may have arisen after the contract of lease was entered into, provided they were not caused by any fault of the lessee, 'and, if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.' .

"But, turning to the next section of the Code, treating of the obligations and rights of the lessee, we find, in article 2715, that: 'The lessee is bound to cause all necessary repairs to be made which it is incumbent on lessees to make, unless the contrary hath been stipulated,' and, among these, in the next following article, we find that: 'The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make: * * * To windows, shutters, * * * locks and hinges. * * * '

"It is true the article of the Code quoted above was not expressly referred to in the opinion in Brodtman v. Finerty, but it was observed that the repairing of a shutter or renewal of a hinge was a very ordinary repair, and was not one of the serious defects or vices against which the lessor had guaranteed the lessee, under the terms of article 2695 of the Civil Code. * * *

"It is not necessary to decide the disputed question whether the lessee notified the lessor of the need of the repairs or demand-

ed that they be made. It was held in Barnes v. Beirne, 38 La. Ann. 280, and in Tucker v. I. C. Railroad Co., 42 La. Ann. 114, 7 So. 124, that ignorance of the condition of the building on the part of the lessor, or the circumstance that the dangerous condition could not be detected easily, did not exonerate the lessor from liability for damages resulting from the fall of a part of the building, and that it was not necessary to notify the owner of the building of its dangerous condition, to render him liable for whatever damages might result from his neglect to repair it. In the latter case, it was said that, where a standard of duty is fixed and its measure defined by law, its omission is negligence per se. We adhere to that doctrine.

"The right accorded the lessee by article 2694 of the Civil Code, to have made, after having demanded that the lessor make, such repairs to the leased premises as are indispensable does not impose a secondary obligation on the lessee to make the repairs that it is the primary duty of the lessor to make. It is on another principle that the lessee cannot willfully and intentionally suffer a loss or injury to occur as a result of the need of repairs that he himself might make with the rent due the lessor, and put upon the lessor a loss of more than the repairs would have cost. On the same principle, the lessee cannot substitute, for his right to make such necessary repairs as the rent in his hands will pay for, the right to withhold all of the rent or to revoke the contract of lease. But the lessee is not at fault for failing to make any repairs, except those which, by article 2716 of the Civil Code, he is required to make. His right to make the necessary repairs which it was primarily the duty of the lessor to make does not affect the guaranty, imposed by article 2695 of the Civil Code upon the lessor, to protect the lessee from any vice or defect in the leased premises and to indemnify him for any loss that may result therefrom. Nor does the right accorded the lessee by article 2694 of the Civil Code diminish the obligation, imposed by articles 670 and 2322 of the Civil Code upon all owners of buildings, to keep them in repair, under the penalty of having to answer for any damage that may result from their going to ruin or from the fall of any part of the material composing them, as a result of the neglect to repair them."

The case of Hartz v. Stauffer, 163 La. 382, 111 So. 794, has no application to this case. All that was held in that case was that the lessee could not recover for repairs made by him on lessor's building until after he had notified and requested the lessor to make the repairs.

The other cases cited by the lower court hold to the same effect as is held in the case of Hartz v. Stauffer, supra, and have no application here, as plaintiff is not suing to

recover for repairs he has made to lessor's property. We find, therefore, that the only cases cited in support of the opinion of the lower court which are at all applicable to the facts in this case are the cases of Scudder v. Paulding, supra; Westermeier v. Street, supra; and Diggs v. Maury, supra; and those decisions, if still the law of the state, are not controlling in this case.

Plaintiff is not suing for damages caused by a continued leaking on his furniture and operating machinery. He is suing for damage done to them by leaking caused by an extra heavy rain on the night of April 10, 1932. It is true he testified that the roof leaked on several occasions prior to this date, but he does not contend that his damage was done by the prior rains and the rain of April 10th. He only conplains of the damage done on that particular night. He does not contend there was any damage going on that he could have stopped and he was not held to have anticipated that the damage caused on the night of April 10th would happen. There is no question involved of the duty of the plaintiff to have lessened the damages.

In the case of Goldstein v. Stone, 12 La. App. 702, 127 So. 73, 74, the Court of Appeal, Third Circuit, in passing on the very issues involved in this case, said:

"We do not believe that a tenant is compelled to undertake to keep his roof in repair. The article referred to gives him the privilege of making necessary repairs, but he is under no obligation to do so. In this particular case the landlord, under the express terms of its lease, had absolved itself from all repairs due lessee, 'except such as may be specially noted herein, or needed to the roof,' but, independent of this provision in the lease, article 2692, R. C. C. declares that:

" 'The lessor is bound from the very nature of the contract, and without any clause to that effect:

" '1. To deliver the thing leased to the lessee.

" '2. To maintain the thing in a condition such as to serve for the use for which it is hired.

" '3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.'

"This article has been held to compel the lessor to maintain the leased premises in a moral, as well as physical, condition, and to insure the lessee moral, as well as physical, peace. Keenan v. Flanigan, No. 8578, Court of Appeal, Parish of Orleans, unreported, see Louisiana and Southern Digest, affirmed in 157 La. 750, 103 So. 30 [38 A. L. R. 248].

"We are of opinion that the lessee was justified in abrogating his contract of lease, and that the lessor cannot recover."

And in the case of Clark v. Greco, 13 La. App. 660, 127 So. 647, 648, the same court, in passing on a similar question, said:

"The defense in this case, like that in Goldstein v. Stone, 12 La. App. 702, 127 So. 73, decided March 24, 1930, is based upon the theory that article 2694 of the Civil Code imposes an obligation upon the tenant to make necessary repairs in the event the landlord fails to do so. Our answer to this contention here must be the same as it was in the cited case, where we held that the article of the Code referred to confers upon the tenant the privilege, but does not impose the obligation, of making the repairs. The interesting discussing of the genesis of the codal provision referred to and its comparison with a similar article in the Code Napoleon, contained in defendant's brief, is a tribute to the industry of counsel, but the question involved is now settled beyond controversy, whatever may have been the early jurisprudence. Shelton v. Masur, 157 La. 621, 102 So. 813; Breen et ux. v. Walters et al., 150 La. 578, 91 So. 50; Landry v. Monteleone, 150 La. 546, 90 So. 919; Ciaccio v. Carbajal, 145 La. 869, 83 So. 73; Allain v. Frigola, 140 La. 982, 74 So. 404; Brown v. Losch, 8 La. App. 278; Evans v. Hollander, 2 La. App. 409. The cases of Bianchi v. Del Valle, 117 La. 590, 42 So. 148, and Brodtman v. Finerty, 116 La. 1103, 41 So. 329, where the court held that express provisions of the Code required the lessee to repair windows, shutters, etc., and that the failure of the tenant to make such repairs would bar recovery for damages occasioned thereby, are not in point. Our conclusion is that the defendant is liable."

It seems, therefore, that the late jurisprudence of this state conforms unanimously with the rule laid down in the case of Boutte v. New Orleans Terminal Co., supra, and is controlling over the early jurisprudence on the subject. In this case plaintiff was under no obligation to repair the roof of the building he was leasing from defendant, and it was the duty and legal obligation of defendant to keep the roof in repair and prevent its leaking, and his failure to do so subjected him to the damage caused to his lessee by the failure.

The plaintiff swears he notified defendant of the leaky condition of the roof and asked him to repair it. Defendant denies this fact, and the lower court therefore properly held, by only considering the oral testimony of the two, that there was not a preponderance of evidence in favor of that fact. Be that as it may, the proof is clear that the roof did leak and the evidence shows that defendant was living on the same floor under the same roof, the remainder of which was leased to plaintiff, and that after April 10, 1932, defendant patched the roof over his

apartment. He is held to have known the condition of the roof, and the law makes him liable regardless of his personal knowledge.

We find, therefore, that the defendant is liable to plaintiff for any damage caused him by virtue of the defective roof. We, however, agree with the lower court that the evidence is not sufficiently definite for us to base a judgment thereon. There is no doubt that plaintiff has received some damage, but we cannot say how much from the record as made up. An operating machine was damaged to the extent that it would not work, due to being wet. It is not shown that it cannot be repaired or how much it would cost to repair it. It is possible that it might be made as good as new for a small amount. We cannot guess at the amount of damages in a case of this kind when the exact amount of damages can be easily estimated and shown by competent evidence. The same applies to all other items claimed by plaintiff. We think it just that plaintiff be given an opportunity to prove what amount of damages was caused him.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed as to question of liability of defendant, and the demand of plaintiff for damages is dismissed as of nonsuit; cost of appeal to be paid by appellee.