## GRIGSBY v. MORGAN & LINDSEY et al.
### No. 4546.

Court of Appeal of Louisiana. Second Circuit.
June 5, 1933.

Goff & Goff, of Arcadia, for appellant.

B. A. Hamilton, of Jasper, Tex., and Madison, Madison & Fuller, of Monroe, for appellees Morgan & Lindsey.

Barksdale, Warren & Barksdale, of Ruston, for appellee Holstead.

TALIAFERRO, Judge.

Plaintiff seeks to recover judgment against Judge John B. Holstead and Morgan & Lindsey, a commercial copartnership, for injuries to her right foot and ankle resulting from a fall sustained by her, caused by the heel of her shoe hanging in an opening in the floor, adjacent to a metal ventilator, of a store building in Ruston, La., owned by said Holstead and leased by him to the copartnership. This happened May 5, 1931.

In the original petition the lessee's name and juridical entity are given as "Morgan & Lindsey Chain Stores," a corporation of the city of Jasper in the state of Texas, of which B. Morgan, of same residence, is president. It developed from the contents of exceptions thereafter filed that the lessee was a copartnership and not a corporation, and that its correct trade-name and title is "Morgan & Lindsey," composed of B. Morgan and B. G. Lindsey, of Jasper, Tex., and C. A. Morgan of Monroe, La. The original petition and citation thereunder were served on Holstead, April 5, 1932, and on R. O. Stinson, Ruston manager of Morgan & Lindsey, on same day. The citation served on lessee was directed to Morgan & Lindsey Chain Store. On motion of defendant this service and citation were set aside by the court. After this was done, plaintiff filed a supplemental and amended

petition May 17, 1932, wherein the errors in the original petition as to name and legal character of said lessee were corrected, and this amended petition, with copy of original petition, was served on May 28. Exceptions of no cause or right of action, of misjoinder, and a plea of prescription of one year were filed by Morgan & Lindsey. These were overruled. The plea of prescription is based upon the state of facts pleaded therein, viz.: "That plaintiff herein alleges that she received injury. through the fault and negligence of this defendant on May 5th, 1931; that the petition filed herein April 4th, 1932, and the citations and attempted services thereof are and were illegal, null and void, and of no effect as to this defendant; and that the so called amended and supplemental petition of plaintiff was filed May 17th, 1932, and that such filing and the subsequent service thereof both occurred more than one year after the alleged accident, of which plaintiff complains."

All exceptions and pleas filed have been abandoned except the plea of prescription.

Petitioner alleges that she frequently shopped in defendant's place of business in Ruston, and when injured she was therein for the purpose of making a purchase, and, while being waited on by one of the clerks, the heel of the shoe on her right foot "got caught and fastened in a defective place in the floor, * * * at or near a ventilator in said floor, causing her to fall," inflicting certain painful and permanent injuries for which defendants, as lessor and lessee of said building, are liable to her. She further alleges that the hole and defect in said floor, caused by a floor board not reaching the ventilator, and the ventilator itself being below the floor level, is a defect not clearly visible to customers entering and moving along the aisle from the front, but was known to, or should have been known to, said owner and his lessee, and should have been repaired by them; that thereby said defendants failed in their legal duty to keep said building in a safe condition for those coming therein as customers; and that it was gross negligence on their part to allow said defective condition of the floor to remain as it was at the time she was injured. She avers freedom from fault on her part. The elements of damages sued for are enumerated as follows: For professional services of Dr. J.

| | |
|---|---:|
| J. Bennett..................... | $ 85.00 |
| To Ruston-Lincoln Sanitarium for X-ray ......................... | 10.00 |
| For pain and suffering from the injuries and bruises to her foot, ankle, and body............... | 3,000.00 |
| For deformity of her foot and the injury to her appearance in trying to move about................. | 2,500.00 |
| For inability to perform her usual duties ....................... | 1,000.00 |

Defendant Holstead admits ownership of the building occupied by Morgan & Lindsey and lease thereof by him to them. In all other respects he denies the allegations of the petition.

Morgan & Lindsey admits lease and occupancy of the Holstead building to conduct a general mercantile business therein, and that same was open to its customers and to the public generally. All other allegations of the petition are denied. Neither defendant charges plaintiff with negligence.

The lower court awarded plaintiff judgment for $600, and she prosecutes this appeal, complaining of the inadequacy of the amount of the judgment. Both defendants answered the appeal, praying that the judgment in favor of plaintiff be reversed. Morgan & Lindsey also filed a plea of prescription in this court identical in salient parts as the one filed in the lower court.

#### Plea of Prescription.

Defendants are sued as joint tortfeasors. If they sustain this relationship to each other, their liability to plaintiff, if any, as a result of their offense, is in solido. No citation of authority in support of this principle is necessary. Two of the most recent cases so holding are: Gardiner v. Erskine et al., 170 La. 212, 127 So. 604; Jones v. Maestri, Com'r, 170 La. 290, 127 So. 631.

It has been frequently held that a suit by a guest or customer of the tenant against the landlord or tenant for damages caused by a defect in the leased building is one ex delicto, and is therefore barred by the prescription of one year. Civ. Code, art. 2315. However, "a citation served upon one debtor in solido, or his acknowledgment of the debt, interrupts the prescription with regard to all the others and even their heirs." Civ. Code, art. 3552.

It is urged by Morgan & Lindsey that the service made under the original petition, which was quashed by the court, was so illegal, null, and void, that no effect whatever followed same; that the current of prescription against it was not even interrupted thereby, and that as a valid service was only made on it on May 28, 1932, over one year after the alleged injury, that prescription barring the suit had attached.

We find it unnecessary to pass on this question. It is our opinion that the timely service made on Judge Holstead interrupted the running of prescription against Morgan & Lindsey. We think there was perfect solidarity of obligation between these defendants, and, if this is true, there can be no doubt of the correctness of our conclusion.

Counsel for Morgan & Lindsey contend, and correctly so, that, if the solidarity of obligation between it and Holstead is imperfect, the service on the latter did not inter-

rupt prescription as to the former, citing: Civ. Code, art. 2077; Corning v. Wood, 15 La. Ann. 168; Jacobs v. Williams, 12 Rob. 183; Gay. v. Blanchard, 32 La. Ann. 497, 502.

In the first of the cited cases it was held by the court that an acknowledgment of the debt by the maker of a note does not interrupt prescription as to the indorser. The court said: "They are not debtors in solido in the meaning of arts. 2092, 3517 of the Civil Code, which declare that a suit brought against one of the debtors in solido, or his acknowledgment of the debt, interrupts prescription as to the rest. Per Curiam: The maker and endorser do not bind themselves at the same time, or by the same contract, but by different and successive contracts, without any privity or reciprocity."

In the second of these cited cases, it was held that suit against the acceptors of a bill of exchange does not interrupt prescription as to the drawer and maker. This decision expressly affirms the principle enunciated in Jacobs v. Williams, referred to above, and states that that decision overruled the earlier one of Allain v. Longer, 4 La. 152, which held that a suit against an indorser of a note interrupted prescription as to the maker and other indorsers.

In Gay v. Blanchard, supra, the court succinctly gives the reasons for the holdings in the previous cases, although there was solidarity of obligation as between the person cited and those not cited before prescription accrued. The court said:

"Solidarity may be perfect or imperfect. In the former the co-obligors are mandataries of each other; in the latter they are, not. * * *

"It is perfect, and the obligors are the mandataries of each other, when by the same act, at the same time, they bind themselves to the performance of the same thing. It is imperfect (and they are not mandataries of each other) when they bind themselves to the same thing by different acts or at different times."

Basing their argument upon the doctrine of these three cases, counsel for Morgan & Lindsey say that, if both defendants are liable to plaintiff for the injuries complained of, such liability arose, not from the same act, nor at same time, but from different acts and at different times, under different rules of law; that the tenant's obligation springs from the general law of negligence (article 2315, Civ. Code), while that of the landlord arises from special provisions of the Code.

Article 2077 of the Civil Code and the decisions cited by defendant, commented on supra, have reference to conventional obligations and not to liability consequent to tortious acts. This latter liability is founded upon the law of negligence appearing under different titles and chapters of the Code.

Article 2322, falling under the chapter dealing with "Offences and Quasi Offences," reads as follows: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

To the same effect is article 670, appearing under the chapter "Of Servitudes Imposed by Law," which reads as follows: "Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

It is negligence, a breach of legal duty, to be guilty of the acts of commission or omission mentioned in these articles.

██ It has been held that, in addition to the landlord's duty to the public as regards maintaining his building in safe condition, there is a correlative duty on the tenant who, tacitly or expressly, invites customers into the leased building to see to it that life and limb are safe from injury therein from defects caused by decay or otherwise. The customer has the right to assume that both the owner and tenant will discharge the obligation imposed on them by law, and where it appears that they have not done so, and damage results, they are both responsible. The injured person may sue either or both. Williams v. Liberty Stores, 148 La. 450, 87 So. 233; Theodore v. J. G. McCrory Co., 17 La. App. 684, 137 So. 352.

In the latter case plaintiff recovered damages for splinter from the floor of the leased building piercing his foot through hole in sole of the shoe. In the first case plaintiff's contributory negligence barred recovery.

In the case at bar the negligence of which plaintiff complains has two phases: (1) Existence of the hole in the floor before the building was leased to Morgan & Lindsey, and (2) allowing it to remain without repair after the lease. The negligence of defendant Holstead embraced both phases while that of the tenant only embraced the second one. From the moment of occupancy of the building by the tenant its negligence and that of the owner became joint and concurrent, and thus continued to the time of plaintiff's injury. It is shown that the tenant knew of the defect in the floor long before the accident happened. Pursuing this line of reasoning still farther, and applying the rule contended for by counsel, we find that from the fact of execution of the contract of lease, and thereafter to the time plaintiff was injured, defendants were legally bound to the performance of the same thing, viz., to see to it that the leased premises were safe for customers therein. By the same act and at the same time they bound

themselves, or were held bound by law, to the performance of the same duty.

We think the plea of prescription was properly overruled.

## On the Merits.

A discussion of the facts and law involved in the consideration of the plea of prescription trenched, to some extent, upon the issues involved in the merits of the case.

Defendant's building faces east. In its south side are two lines of counters about 3½ feet apart, running from a distance of 6 feet from the front door to the rear of the building. In the aisle between these counters, near the center thereof, are three metal ventilators in the floor. The first one is 18 feet from the door and the second one is 12 feet and 11 inches from the first one. The third is farther towards the rear of the building. These ventilators measure 12x15 inches, and when properly installed should be on a level with the floor on all sides, having the sleepers or other substantial foundation to rest on. The ventilator nearest the front (east) door was in its entirety below the floor level, from one-eighth of an inch to one-half of an inch, according to the testimony of mechanics who gave evidence on the subject. On its east (front) side one of the floor boards (3¼ inches wide) failed to reach it by 1¼ inches. As the floor was 13/16 of an inch thick, the opening there was 3¼ inches by 1¼ inches by 13/16 inches, with the sleeper as its bottom. Trash and floor sweep, accumulating for some time, had filled this hole to, or near, a level with the floor. Plaintiff asserts and testified that, as she was walking from the front of the building, along beside the counter on her left, the heel of her shoe entered this open space, was fouled, causing her to lose her balance and to fall at length on the floor. She had been in a different part of the building selecting some presents for some friends graduating from high school, and as she was about leaving the store she met her husband, who was entering, and, desiring to acquaint him with her selections, had begun, with him immediately behind her, to return to where the presents were located, when she fell. She was wearing a low quarter shoe with a medium size heel—"common sense" heel, as described by her.

■ Defendants offered some testimony in support of their contention that plaintiff did not fall at the first ventilator, but, without detailing all the evidence on the question, for and against their position, we are convinced the testimony clearly establishes that the accident happened at the first ventilator, the one where the opening in the floor was. Plaintiff is fairly positive this is where it occurred, and her husband, who was by her side or immediately behind her at the time and lifted her from the floor, is positive that it happened there, and is positive he saw the heel of the shoe come out of the hole as she fell. We are satisfied that the opening in the floor was so obscured by the deposit of floor sweep that it was observable only on close inspection, such as is not usually given by, nor required of, one whose business is only to make a purchase. The shoe worn by plaintiff at time of the accident was not offered in evidence, but, as the opening at the side of the ventilator was only 1¼ inches wide, it is not improbable, but fair to assume, that the heel on plaintiff's shoe would fit tightly therein, when forced by the weight of the body, thus effectually tripping her as she attempted to make the next step. The floor sweep was spongy and allowed the heel to force its way to or near the bottom of the hole.

The fact that plaintiff fell at length forward on her left side, knee, and elbow is strongly corroborative of her contention that her heel did hang in the vacant space in the floor, and argues as equally strong against the suggestion by defendants that the fall was due to a simple turning of the right ankle while the foot was on smooth surface. Had she experienced an ordinary turning of this ankle, it is almost certain she would have fallen towards her right.

Plaintiff had walked down the aisle containing the ventilators a few moments before she fell and had not seen the defective condition of the floor which caused her to fall. She had no knowledge of such defect prior to being injured.

The record does not definitely disclose the origin of this vacant place in the floor, but tends to establish that it was left there when the floor was put down, or, if it was at that time filled with wood, that the filler worked out and was not replaced. Mr. Stinson, defendant's manager and one of its stockholders, says the hole was there when his company rented the building six years before the case was tried, but he never called it to the attention of the lessor, nor made any effort to repair it himself.

■■ If the lessee did not choose to make the repairs to insure safety to its customers, which would have required little effort and negligible expense, it was their obvious duty to have provided adequate means of giving notice to such customers of the presence of the danger. It was also their duty to have notified the lessor of the existence of such dangerous condition so that he could have repaired it. Civ. Code, arts. 2692, 2693, 2694. If the owner, after being advised of the condition in the floor, had not repaired it, then the lessee could have done so at the expense of the owner. Civ. Code, art. 2694. Boutte v. N. O. Terminal Co., 139 La. 945, 72 So. 513; May v. Schepis, 147 So. 717, decided by us April 28, 1933, and authorities therein cited.

■ It is the duty of every owner of a build-

ing to keep himself informed as to its condition. He is by law held to knowledge of such condition whether, as a matter of fact, he possesses such knowledge or not. Articles 670 and 2322 of the Civil Code are definite in this respect.

The following decisions maintain the rules announced in the codal articles: Schoppel et al. v. Daly et al., 112 La. 201, 36 So. 322; Allain v. Frigola, 140 La. 982, 74 So. 404; Cristadoro et ux. v. Von Behren's Heirs et al., 119 La. 1025, 44 So. 852, 17 L. R. A. (N. S.) 1161; Wise v. Lavigne, 138 La. 218, 70 So. 103; Boutte v. N. O. Terminal Co., supra; Ciaccio v. Carbajal, 142 La. 125, 76 So. 583.

In Thomson v. Cooke, 147 La. 922, 86 So. 332, the landlord was held in damages to the guest of the lessee on account of steps falling under him, notwithstanding landlord and her carpenter had inspected the building short time prior and found nothing wrong or in need of repairs. Breen et ux. v. Walters et al., 150 La. 578, 91 So. 50; Davis v. Hochfelder, 153 La. 183, 95 So. 598; Klein v. Young et ux., 163 La. 59, 111 So. 495.

In Richard v. Tarantino, 15 La. App. 311, 131 So. 701, it was held that a petition that set forth that plaintiff, a daughter of the lessee, was injured by the leg of the chair, in which she was sitting, going through a hole in the floor, of which petitioner had knowledge for several months, disclosed a cause of action. The fact of knowledge of existence of the hole alone did not show contributory negligence. Other facts might and could have affected the situation in such way as to destroy or overcome the inference of such negligence arising solely from the knowledge mentioned. Vanosby v. Creidman, 15 La. App. 488, 131 So. 702; Thompson v. Moran, 19 La. App. 343, 140 So. 291.

It is the duty of a store proprietor to provide safe place for his customers to trade with him. They are tacitly, if not expressly, invited to enter the building and inspect and purchase goods. By the very nature of things he has the right to rely upon the assumption that the entrance to the building and its floor, whereon he must stand or walk, as his needs may require, are safe for such uses on his part. He has the right to assume that the proprietor has done all that the law requires of him with reference to the safety and protection of customers lawfully within his place of business. It is only where the danger to life or limb is obvious, within plain view, or its presence known to the injured customer, will the right to recover for damages traceable to such a danger be denied on account of contributory negligence. Williams v. Liberty Stores, supra. In this case it was held that "it is negligence for a store proprietor to leave a box in the aisle used by customers inspecting merchandise." The plaintiff did not recover because the box was in full view for a distance of 27 feet, and her failing to see it was held to be contributory negligence barring recovery.

In Theodore v. J. G. McCrory Co., supra, it was held (quoting syllabus) that:

"1. Store proprietor must afford patrons safe place in which to trade with him.

"2. As regards liability to customer whose foot was pierced by splinter from floor, presumption existed that store proprietor knew premises were dangerous, in absence of evidence to contrary. In absence of evidence to contrary the store proprietor was presumed to have known that premises were dangerous, for a wooden floor, which has so far decayed as to split up into fragments, is manifestly unsafe.

"3. Evidence in customer's action against store proprietor for unsafe condition of floor, resulting in customer's foot being pierced by splinter, held to justify recovery."

The rule is well expressed in 16 R. C. L. 1096, § 614.

We are convinced that plaintiff's case has been made out against both defendants, and shall now consider the quantum of damages, which we are asked by plaintiff to increase over the amount allowed by the trial judge.

Plaintiff was dazed by the hard fall on the store floor, and was helped by her husband to a box nearby, provided by one of the store employees. She there experienced intense pain and was threatened with faint for half an hour, being fanned by her husband during the time. They left the store and returned to their home. She says that on account of the financial condition of her husband she undertook to treat her injuries herself, not consulting a physician, until May 14, when her two daughters from Shreveport visited her and insisted that the aid of a physician be secured. This was done. The following findings of fact of the trial judge on the question of nature and extent of plaintiff's injuries are supported by the evidence in the case, and we adopt same:

"Plaintiff is 46 years of age. As the wife of a farmer it has been her custom to perform the usual household duties of a farmer's wife. Her general health, apparently, is frail. She weighs now 96 pounds. Two years ago she weighed 120 pounds, For three months after the accident she suffered great pain in her foot and ankle. Immediately after the accident her foot and ankle turned black and became badly swollen and remained in that condition for several months. Her foot and ankle still swell considerably, and especially at night after she does her day's work, giving her considerable pain. Changes in the weather cause pain in the ankle. Her ankle is weak and she can not stand on it very long at times. Her injured ankle has a tendency to turn inwards when she walks or stands on

it. Thus, in a manner, she describes her condition at the time of and since her injury.

"Dr. J. J. Bennett examined and has treated her injury on several occasions. His first examination was on May 14, 1931. He found her right ankle badly swollen. He recommended that she have an X-ray made of the injured ankle. That was done and the X-ray showed that there were no broken bones. His diagnosis revealed that the ligaments on the outside of the right foot were torn, producing what is known as a sprain. There was·evidence of a hemorrhage under the skin. He examined the injured foot again just a few days before the trial and found some adenia and a lack of proper motion in the foot. He says there will always be some laxness on the outer side of the foot, due to the sprain, and that the ligaments in that area will always be weak. The only remedy is to put a brace on the foot to hold it straight. It is his opinion that her foot will never be normal again.

"It is evident from the testimony that plaintiff has suffered considerable pain from her injury. She did not consult a physician for some two weeks after the accident, and has since consulted her doctor very infrequently."

The trial court, however, in the face of its own findings, quoted above, says that the injuries sustained by plaintiff were not of a serious nature. The fact that she did not at date of trial (16 months after the accident) have normal use of her injured foot; that it was swollen some, a condition that would become aggravated when she walked or stood on it for considerable periods of time; that adenia of the foot was present a few days before trial, and that she had lost nearly 30 pounds in weight since being hurt—we think disclose the injuries to be very serious and doubtless painful.

The amount of damages given by the lower court is entirely out of line with the awards of the appellate courts in similar cases, and, we think, wholly inadequate compensation for the pain, discomfort, and suffering the record discloses plaintiff had to endure, and, in addition to this, it is not certain her foot will ever be of the use to her it was before the injury. All things considered, we think the judgment should be increased to $1,200.

For the reasons herein assigned, the judgment of the lower court is increased to $1,200, and, as thus amended, it is hereby affirmed.