(57 South. 577.)

No. 18,644.

BAUCUM v. PINE WOODS LUMBER CO. et al.

(Jan. 29, 1912.)

*(Syllabus by Editorial Staff.)*

1. NEGLIGENCE (§ 32*)—INJURIES TO INVITEE —LIABILITY OF OWNER—DEFECTIVE ROAD.

Defendant sawmill company agreed to buy as much of plaintiff's timber as he delivered to its millpond, and in a better condition, and plaintiff used defendants' road for 11 days with its road maintained by defendants, the latter being the nearer way to the millpond, and in a better condition, and plaintiff used defendants' road for 11 days with its knowledge and implied consent, and in crossing a bridge over the approach to the railroad tracks the feet of one of his mules broke through, and the mule fell on plaintiff. *Held*, that defendant was liable for the·injuries resulting from its negligent maintenance of its road and· bridge,· being under obligation to plaintiff and others of the public using it with its knowledge to see that it was in a reasonably safe condition.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

2. DAMAGES (§ 130*)—EXCESSIVE DAMAGES— PERSONAL INJURIES.

Plaintiff was injured by his mule falling upon him and severely bruising him and fracturing his leg close to the ankle joint. He was confined to his bed for six weeks, and had to use crutches for four or five months,. suffering considerably, but the only permanent injury was the loss of half the mobility in the ankle joint, with slight hope of improvement. *Held*, that a verdict for $3,000 was excessive, and will be reduced to $2,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370, 371; Dec. Dig. § 130.*]

Appeal from Second Judicial District Court, Parish of Webster; R. C. Drew, Judge.

Action by Oscar F. Baucum against the Pine Woods Lumber Company and another. Judgment for plaintiff, and defendants appeal. Modified and affirmed.

Henry Moore, H. H. White, and White, Thornton & Holloman, for appellants. Stewart & Stewart, for appellee.

PROVOSTY, J. The defendant company agreed to buy as much of plaintiff's timber as plaintiff could deliver in the pond of its sawmill. The timber was on the east side of the track of the Louisiana & Arkansas Railway, and the defendant's sawmill was on the west side, so that for delivering the timber the plaintiff had to travel west and across the railroad. The public road goes due·west until it reaches a point about 500 feet from the railroad, and then turns towards the right, or northwesterly, and crosses the railroad about 1,000 feet further north; and then resumes its course due west. At the point where it thus turns towards the right, or northwesterly, a private road of the defendant company for the use of its sawmill branches off towards the left or southwesterly, and goes direct to the millpond. Plaintiff could have crossed the railroad by either of these routes; for on the other, or sawmill, side of the railroad, paralleling the railroad at·a distance of about 300 feet, another private road of the defendant company's for the use of the sawmill leads to the same pond.

Plaintiff used the private road going direct to the pond. It was 1,450 feet shorter, and in better condition. He had been doing so for 11 days, to the full knowledge, and with the implied consent, of defendant when the accident happened out of which the present suit has grown. The railroad track is on a raised roadbed, and the said wagon roads across it are elevated to its level by means of inclined bridges. Plaintiff had delivered a load of logs, and was returning home with his empty four-mule wagon, astride one of the hind mules, and traveling no faster than usual, when the foot of the mule he was on broke through the floor of one of the bridges, and the mule fell on him, and both he and the prostrate mule were dragged some 25 feet. He was severely bruised, and his leg was fractured close to the ankle joint. He was confined to his bed for six weeks, and had to use crutches for some four or five months; and naturally suffered a great deal. The only permanent injury, however, consists in the ankle joint having lost about half its mobility, with little chance of improvement. The bridge was less than two years old, and therefore comparatively new. The reason of the mule's breaking through was that the material of the floor was weak. It consisted of discarded odds and ends of tongued and grooved flooring, such as is used for car decking, 8 inches wide by 1½ inches thick, too thin for bridge timber, and more or less sap and worm-eaten at that. There was absolutely nothing to reveal to plaintiff the defective condition of the bridge, or to put him on notice.

[1] That the responsibility rests on defendant is plain. Defendant opened this road and constructed this bridge, and held this route out for use by those having business with the sawmill, and knew perfectly well that plaintiff was using it. This case is not distinguishable from Cristadore v. Van Behren, 119 La. 1025, 44 South. 852, 17 L. R. A. (N. S.) 1161, where this court held, quoting from syllabus:

"The owner of a wharf which has collapsed while being put to the use for which it was intended is responsible in damages to those who were legitimately on it at the time and were injured."

In Lawson v. Shreveport, 111 La. 73, 35 South. 390, this court held the owner of a bridge responsible under circumstances very much less aggravated than those of the present case on the principle that, quoting syllabus:

"Where one knowingly leaves open his property under circumstances calculated to lead others to think that they are invited to use it, he impliedly licenses its use by the public, and assumes the obligation to see that it is kept in a reasonably safe condition."

[2] Defendant contends that plaintiff should have used the public road for crossing the railroad, and in using this private road was a mere licensee to whom no duty to have this bridge in safe condition was due; and, again, that the public road was safe, and plaintiff has but himself to blame for having chosen the unsafe way when there was a safe one. Defendant further contends that the defective condition of this bridge was so evident that the plaintiff should have known of it, and that it was so hidden that the defendant could not have known of it. The case admits of no defense, and these defenses, we assume, are made simply perfunctorily; the real defense being that the amount of $3,000 allowed by the jury is excessive, with which we agree.

Judgment reduced to $2,000, and as thus reduced, affirmed, plaintiff to pay the costs of appeal.