## ROCKEFELLER v. SHREVEPORT YELLOW CABS, Inc.

### No. 5717.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Rehearing Denied July 15, 1938.

Jackson & Mayer, of Shreveport, for appellant.

Harry V. Booth and L. L. Lockard, both of Shreveport, for appellee.

DREW, Judge.

This suit arose out of an automobile collision occurring on the bridge across Cross Bayou connecting the city of Shreveport proper with that part of the city known as Agurs. The bridge is 466 feet long and 24 feet, 2½ inches wide. The center of the bridge is much higher than its approaches, and a view of the entire bridge cannot be had until one has arrived near the center of it. Each end of the bridge is also curved. The banisters on the sides are approximately 4 feet high and are a further obstruction to the view of one entering the bridge or of one on the bridge so far as seeing another enter it. Plaintiff, in company with her sister who was driving the car, and two other ladies and a baby, were driving south on said bridge returning from a visit to Vivian, Louisiana. The time was between ten and ten-thirty P. M. Defendant's Yellow Cab traveling in the same direction and returning to Shreveport with two negro passengers, entered onto the bridge a short distance behind plaintiff's car. When they arrived near the center of the bridge

defendant's cab, traveling at a fast rate, passed plaintiff's car. Soon after passing, a sideswipe collision occurred between the Yellow Cab and a car occupied by Ben Reagor and his lady companion. Reagor was driving. The Reagor car, after the collision, veered to the left and headed into the car in which plaintiff was riding. She was seated on the front seat. The impact caused her head to go into the windshield, breaking it and severely cutting her face. She instituted this suit against the Yellow Cab Company seeking to recover damages for said injuries. She itemized her damages as follows:

Doctors' & Hospital bills........$ 89.00
Pain, suffering and discomfort.... 1500.00
Loss of salary and decreased ability to obtain a job because of disfigurement ............... 1000.00
Scars and disfigurement to her face, humiliation and lessened opportunity of a successful marriage ...................... 6000.00

Plaintiff alleged the sole and proximate cause of the accident was the negligence of the driver of the Yellow Cab. She detailed his negligence as follows:

"(a) Passing the car of Mrs. H. C. Everett in which petitioner was riding, at a very high rate of speed.

"(b) Passing the said Chevrolet coach at a point when it was impossible for the cab driver to judge, or even see the oncoming traffic from Shreveport, Louisiana.

"(c) Passing the car of the said Mrs. H. C. Everett while on a curve.

"(d) Passing the car of Mrs. H. C. Everett on what amounted to a hill.

"(e) Passing the car in which petitioner was riding on a bridge incapable of accommodating three cars abreast, without determining the condition of oncoming traffic.

"(f) Passing the car of the said Mrs. H. C. Everett at a time when the said cab driver could not see what was in the depression on the opposite side of the street and when he knew, or should have known, the lights of the oncoming automobiles from Shreveport would not reflect and give warning.

"(g) Passing the car of the said Mrs. H. C. Everett in the night time under the circumstances detailed herein."

Defendant in answer denied each and every charge of negligence made by plaintiff against its driver and alleged the accident and damage to plaintiff were caused solely by the negligence of Ben Reagor, the driver of the car which collided with the automobile in which plaintiff was riding. The negligence it charged Reagor with is driving at an excessive and reckless rate of speed on his left side of the bridge, and that he failed to maintain proper control over his car. It further alleged that Reagor was drinking intoxicating liquor and was not in full control of his faculties. There is no negligence, contributory or otherwise, attributed to the plaintiff.

The lower court awarded plaintiff judgment in the sum of $3,068,—$68 being for hospital and doctors' bills, and $3,000 for all other items of damages claimed by plaintiff. Defendant is prosecuting this appeal and plaintiff has answered the appeal praying that the judgment be increased by $2,000.

The great preponderance of the evidence convinces us that the accident was caused solely by the negligence of the driver of defendant's cab in that he attempted to pass the plaintiff's car at a time when his left side of the road was not free from oncoming traffic for a sufficient distance ahead to permit his passing to be made in safety. Subsection (c), Rule 7, Section 3 of Act 21 of 1932; Ravare v. McCormick & Co., La.App., 166 So. 183. He passed plaintiff's car to its left but before he could return to his right side of the bridge, and while still in the center of the road, the left center and left rear of the cab came in contact and collided with the left front of the Reagor car, causing the Reagor car to veer to its left and collide with plaintiff's car. The preponderance of the testimony is that the Reagor car was on its right side of the bridge at all times until after the first collision occurred. If Reagor had been speeding, as alleged by defendant, and we do not think the evidence shows that to be a fact, it would not relieve defendant. Reagor's car was in plain view of defendant's driver when he started to pass the plaintiff's automobile. The fact that defendant's driver thought he could make it safely does not meet the requirements of the law. The fact is he did not make it and could not do so under the conditions then existing and he attempted to

pass at his own risk. He failed, and his master is liable for the damage caused thereby. Stevens v. Dean, 6 La.App. 537; Ravare v. McCormick & Co., supra.

The evidence conclusively shows that Reagor was not intoxicated and not without the control of his faculties. However, if he had been intoxicated, it is necessary that he commit some act of negligence before he could be condemned in this case, and none has been shown.

The bridge is plenty wide to allow passing without danger, but due to the manner in which it was constructed, with the center so much higher than the ends and with the curves in it at both approaches, it is a dangerous bridge on which to attempt to pass to the left of a car traveling in the same direction. It is unnecessary to discuss in detail here the testimony of each witness. We have done that in our minds and our conclusion from a study of all the testimony is as above set out.

The only remaining questions are the quantum of damages and the suggestion that the case be remanded for further testimony on the question of permanent disfigurement of plaintiff's face.

The case was tried below on December 14, 1937, and judgment rendered February 12, 1938. On February 16, following, defendant filed a motion for a new trial alleging that since the trial the disfiguring scars upon plaintiff's forehead and face had been greatly and materially reduced and no longer resulted in any material disfigurement. It prayed for a new trial in order that it might show this alleged fact by testimony. It attached to the motion one affidavit in which affiant said he had interviewed and observed plaintiff on February 14, 1938, and that the disfiguring effect of the scars on plaintiff's face had been greatly and materially reduced since trial; that practically all the reddish color had disappeared and the scars were no longer of any particular disfiguring effect. The lower court in a written opinion overruled the motion and stated that in fixing the amount of the award he took into consideration the fact, known to him from experience, that the discoloration in the scars was not permanent. The motion was properly overruled. We realize that paint and powder can cover many blemishes on a lady's face, but when the covering is gone the blemish is still there, and how long it is hidden depends a great deal on the weather,—whether dry or damp, hot or cold. Although the discoloration has left the scars, there can be little doubt about the scars remaining on plaintiff's face and forehead for the remainder of her life. Pictures of the plaintiff before and after the accident are in the record. She was a very comely young lady, 34 years of age. She had been up to the date of the accident in the employ of an oil company as a stenographer for a period of 18 months, earning $95 per month. She has not worked since the accident, a period of 6 months, due to the accident. She is entitled, therefore, to $570 for loss of earnings up to date of trial.

Her doctor described her facial injuries as follows:

"There were four lacerations on her face: two on the forehead, one on the left cheek, one on the chin. One scar on the forehead is about 2 inches in length, extending downward from the hairline towards the midline. The other scar on the forehead is about the left eye and is about two and one-half inches in length, vertical, extending into the eyebrow. The scars on the chin and cheek are rather ragged, each about one inch in length. The one on the cheek is slanting towards the mouth, the one on the chin being more or less vertical and extending underneath the chin."

The testimony shows that she was confined to the sanitarium and her home for a period of 6 weeks and that she suffered greatly. She lost a great amount of blood immediately after the accident and the nerve in her left eyelid was severed, causing a constant twitching in that eyelid. She has suffered from nervous indigestion since the accident and has lost ten pounds in weight. We are of the opinion that she is entitled to $750 for pain and suffering, and to $68 for doctors' and hospital bills, and to the further sum of $2,500 for facial disfigurement, making a total of $3,888.

It is therefore ordered, adjudged and decreed that the judgment of the lower court is amended by increasing the award from $3,068 to $3,888, and as amended, it is affirmed with costs.