McBRIDE, Judge.
This is a suit for $10,980 as damages alleged to be due for physical injuries, attendant expenses, and loss of earnings, sustained by Frank F. Madere, plaintiff, as the result of a fall in Baggott’s Bar & Grill on September 3, 1950. The defendants are the operators of the establishment, the owner and lessor thereof, and the latter’s liability insurer. Plaintiff seeks a solidary judgment against all defendants.
Plaintiff attributes his fall to an obstruction in the doorway connecting the men’s toilet with the dining room, and alleges that the obstruction is a vice or defect in the construction and condition of the premises. He avers that he was an invitee.
All defendants filed answers which in effect amount to general denials, and each pleaded, in the alternative, contributory negligence on the part of plaintiff. After a lengthy trial, a judgment was rendered in favor of defendants, in which the trial judge stated:
“ * * * even if all of the defendants’ testimony is disregarded, that the testimony of plaintiff himself, plaintiff's demonstrations of the accident in Court, and the testimony of plaintiff’s witness, Emile Roser, show that the proximate cause of the accident was plaintiff’s own negligence, * *
Plaintiff has appealed.
Baggott’s Bar & Grill, a combination barroom and restaurant operated by Mr. and Mrs. Frank Baggott, occupies a corner location and has entrances on both Magazine Street and Jackson Avenue. The bar is situated in the front part of the establishment, and to the rear is the dining room which ells off and lays at right angles to the bar. A “Gents” toilet is maintained for the convenience of patrons-, the door to which is in the wall of the dining room nearest Magazine Street. After opening the door which swings into the toilet, there is encountered an eighteen inch-wide sill extending the width of the door opening. This sill, the the top of which is a little higher than the dining room floor, is composed of ordinary building bricks laid flatwise, over which had been spread concrete or mortar to a thickness of about one inch. From the top of the sill to the floor level of the toilet is a drop of about seven inches. A 1-inch metal pipe about three or four inches above the toilet floor runs horizontally along the facing of and is flush with the brick sill. Ma-dere claims that he was tripped by the metal pipe and brick sill as he attempted to leave the toilet.
Whether Madere actually met with an accident in Baggott’s Bar & Grill on the date and at the time in question is a controverted issue. In view of the conclusion of the court below that “even if all of the defendants’ testimony is disregarded, * * * the *873 proximate cause of the accident was plaintiff’s negligence/’ we deem it logical and proper to first inquire into plaintiff’s own actions, because if guilty of negligence proximately contributing to the fall, he is barred from a recovery. Therefore, pre-termitting the testimony of the defendants’ witnesses that plaintiff did not meet with such an accident as he describes, and assuming for the purposes of this opinion that plaintiff did actually experience .a fall, we will address ourselves to the question whether plaintiff’s negligence contributed to the accident.
Madere, a carpenter by trade, is a man 72 years of age. He testified that on September 3, 1950 he boarded a Public Service bus bound downtown, and upon its arrival at Jackson Avenue and Magazine Streets, he debarked therefrom for transfer to a Jackson bus which would take him to his home. Having “just missed” a Jackson bus, he states that he stepped into Baggott’s Bar & Grill by way of the Magazine Street entrance and proceeded to the end'of the bar intending to order a cup of coffee. He fixes the time of his entry into the bar at about 4:10 p. m. It does not appear that Madere ever ordered a cup of coffee, for just after entering the bar, he was greeted by his nephew, Emile Roser, who had a glass of beer before him. Madere states that he consumed two beers with his nephew, and that after conversing a while, Madere asked the nephew to show him the way to the men’s room.
Plaintiff testified that he entered the men’s toilet “about 4:30 or 4:45 just approximately.” Roser went in first and was followed by plaintiff, and after using the facilities, Madere opened the door and fell in attempting to step up upon the brick and concrete sill.
Madere used these words in describing the accident:
“A. I stepped from the men’s room onto the slab, what I call the dining room floor. I stepped up like this and this foot got caught on something there, which maybe since I saw the picture is the pipe.
“Q. But you didn’t see any pipe on the night you fell? A. I didn’t say I saw it, but my foot got caught on something. It felt like pipe.” :
* *• * * * *
“ * * * Like anybody would, they know- they got to step up a certain height and they step up. I don’t think that has anything to do with my foot getting caught in that pipe or whatever it was to throw me.”
$ sjc % ‡ ifr
“Let me tell you. I want to explain that again to help clear this thing. As I stepped up with this foot and went to raise the other foot is when my foot got caught in the pipes or whatever caught it. As it raised I met another obstruction when it struck the sill and threw me.”
Roser’s description is:
“ * * * At that time it was dark in there — moist and dark. After my uncle had finished and I had finished and I was adjusting my clothes on myself and he was starting out the door, which he didn’t have much room, he had stepped up and his foot had caught on a object, whichever it was, and he fell. He dove in towards the dining room inside and he fell on his arm. * * * ”
Madere says he left in a taxicab about 5:15 p. m., accompanied by his nephew, to go to the emergency room of the Touro Infirmary.
One of the defense witnesses, Mrs. Cripps, who had charge of the bar and grill until 6:00 p. m. on the day of the alleged accident, testified that plaintiff first entered the establishment “between ten minutes and five minutes to six.” She stated that Gaudet, who relieved her as bartender, came in “just a little before six” and that she was glad to see him “because it looks that I am going to have a lot of static with this old man,” meaning the plaintiff. She stated that plaintiff appeared to be drunk and that she refused to serve him beer which he demanded.
Gaudet testified that upon reporting for work shortly before 6:00 p. m., Mrs. Cripps *874 informed him that she was having trouble with plaintiff, and that he escorted plaintiff out of the premises because he was in a drunken condition.
A waitress, Mrs. Marks, .testified that when she came to work at 6:00 p. m., Ma-dere was drunk, and that after Gaudet had escorted him out of the place, he returned to the dining room through another door and sat at a table and ordered beer, which she refused to serve. She further stated that plaintiff’s nephew also ordered beer, and that she refused to serve him; that both plaintiff and his nephew “gave me an argument,” and that she called the bartender who thereupon put the nephew out. According to Mrs. Marks, plaintiff made no complaint to her of any accident or injury.
The testimony of Madere and Roser as to' the time they left Baggott’s Bar & Grill in a taxicab is in hopeless conflict with the testimony of defendants’ witnesses. Ture-gano, the cab driver, corroborated the defense witnesses. His statement is that he arrived at Baggott’s Bar & Grill at approximately 6:40 p. m., and that Madere and his nephew, smelling of liquor, entered the cab. He says he drove them to Touro Infirmary, arriving at the emergency room at approximately 6:55 p. m., and added that he was certain of the time because he had recorded it on his trip sheet. The vice-president of the owner of the taxicab appeared and testified that the trip sheet showed that Ture-gano’s cab left the bar and grill at 6:40 p. m.
In addition to the three employees, Mrs. Cripps, Mrs. Marks, and Dennis Gaudet, two customers who were present, McGuinness and Noonan, testified that plaintiff was drunk and boisterous. All five of these witnesses were positive that there was a light in the men’s toilet, the women saying that they noticed it through a window between the toilet and the kitchen, and the three men saying they saw it when they used the toilet themselves. All five are positive that plaintiff made, no complaint whatever that he had been injured, and they did not see him fall in the establishment.
Plaintiff’s counsel strenuously attacks the testimony of the defense witnesses as to the time Madere left the bar and grill in the taxicab. His contention is that the three employees, the two patrons, and the taxicab driver testified falsely. Dr. Weiss, who says that he treated Madere in the emergency room, was asked the specific question whether he recalled approximately what time of day it was that Madere arrived. Dr. Weiss’ reply was: “No, I don’t. It was in the afternoon or late evening.” Plow long Madere was treated in the emergency room is not shown, but the charts of the hospital show that he was admitted to a ward in the institution at 10:40 p. m.
We have carefully read the record and studied the photographs of the sill between the dining room and the men’s toilet, and our conclusion is that the trial judge arrived at a correct solution of the matter. We have no doubt that Madere, who says he intended to get a cup of coffee while awaiting the next Jackson bus which would take him to his home, spent several hours in Baggott’s Bar & Grill. His own testimony is that he entered the bar at 4:10 in the afternoon, and the overwhelming weight of defendants’ evidence is that he left in the cab at 6:40 p. m.
According to Madere and his nephew, Madere only had two beers; Roser admitted having consumed four beers, two' before and two after meeting Madere. We express serious doubts as to the truthfulness of their statements. The bartender testified that while the pair was sitting at the table their order was for beer and “coffee royal,” which was described as being coffee with “a shot of whisky.”
It appears to us that a normal person would experience no difficulty in walking over a step seven inches high with a tread of eighteen inches. If the plaintiff had used care, no hazard would have been encountered. The accident, if one did occur, happened at a place which was amply lighted, and the plaintiff by using ordinary care would have found no difficulty or trouble in stepping up from the toilet floor to the top of the sill. The operator of the establishment was not under the duty of furnishing a perfect or a foolproof step, but only such a step as could be ascended and descended in safety by the exercise of ordinary care.
*875 On cross-examination the defense witnesses were unshaken in their testimony that Madere was drunk when he entered the place, and also when he got into the cab, and we have no reason to discount their testimony.
Further, the evidence shows that Madere normally has a limp, and we believe that this physical condition, coupled with his ingestion of alcohol, caused him to become unsteady on his feet, and that the fall was caused solely because of that. Madere says that he had had !but two beers. Even taking his statement that he had two beers as correct, we cannot say that his powers of ambulation were not impaired, because it is a well-known fact that while some persons might consume a substantial quantity of alcohol and not became affected thereby, others after having a drink or two become exhilarated or even stupefied. The taxicab driver, who has no connection whatever with Baggott’s Bar & Grill, is certain that he smelled liquor on the two men when they entered his cab. A few words might be said also of Gaudet, the bartender. While this man was an employee of Baggott’s Bar & Grill on the date the accident is said to have happened, at the ti'me of the trial he was engaged in another employment, and there is no good reason for saying that he testified to anything but the truth. The preponderance of the testimony is to the effect that the plaintiff was intoxicated, or at least under such influence of alcohol as to constitute the proximate cause of his fall.
Appellant’s counsel vigorously assails the credibility of the defense witnesses pointing out that two of them made admissions of having been arrested and all are habitues of barrooms. We know of no authority holding that merely because a person has been arrested that that fact alone would bar him from being a competent witness, or would tend to destroy his credibility. We also answer that when an accident happens in such a place as Baggott’s Bar & Grill, it would be hardly possible that there would be witnesses other than employees or patrons of the establishment. As stated by our brothers of the Second Circuit in Frazier v. F. Strauss & Son, Inc., La.App., 173 So. 343:
“ * * * nor do we reject the testimony of any witness simply because his- or her personal conduct may not be successfully defended under the moral code. * * * ”
After all Roser and Madere are in the same situation as some of the defense witnesses. They both admit having been in Baggott’s Bar & Grill on other occasions. Madere has been going into the place once or twice a month for the past three years.
For the reasons assigned, the judgment appealed from be and it is hereby affirmed.
Affirmed.