McBRIDE, Judge.
Mrs. Dorothy Rice Steer, who was authorized by Act No, 594 of 1954, p. 1096, to file this suit, seeks to recover a large sum to compensate her for personal injuries which she allegedly sustained as the result of a fall in a ladies’ dressing room in the L. E. Rabouin Public School in New Orleans on the morning of October 24, 1953. 'Her husband joins her in the suit and endeavors to recover his losses incurred by reason of his wife’s injuries. The suit was dismissed in the court below after due trial on the merits and the plaintiffs have taken this appeal.
The gravamen of the complaint is that the accident occurred because of a vice or defect in the construction of the building “especially without the proper safeguards of coloring and lighting to attract attention to it.” The Orleans Parish School Board denies the existence of any vice or defect in the construction of the school building, denies the insufficiency of the lighting, and alternatively pleads that Mrs. Steer was guilty of contributory negligence.
Mrs. Steer entered the dressing room from a hallway, it being necessary for her to step up from the hall surface to the higher level of the rest room floor. Inside the room the floor is on one level until it reaches a point near an exit where it drops 81/2 inches to a lower level. This creates a rectangular-shaped “well” surrounding the exit door. The floor is composed of grey colored terrazzo with a sill or border of similar color but of a darker hue about the edge of the well. We are told by the architects that the floor was so constructed to accommodate the drain pipes from the toilet facilities which are embedded in the elevated portion. Mrs. Steer encountered the step off and fell from the higher to the lower level in attempting to pass between the row of toilet booths and a lady who was standing in the room.
The question of the adequacy of the lighting in the room came in for considerable discussion. A friend of Mrs. Steer, a Mrs. Hatcher, who was present when the accident happened, testified that the day was bleak and dismal. When asked whether the electric lights were on, the witness said:
“I walked in there and saw everybody standing in there, and I walked in there, too, but it was, you know,— *129 I didn’t look for any lights or anything, but I just knew it was dark and dim,— not dark like nighttime but just dim.”
Mrs. Steer was asked on direct examination whether the overhead electric lights in the room were turned on and her reply to the question was:
“I don’t know, but I think so. I think so, hut I wouldn’t say for certain, Mr. Meunier.”
There is testimony emanating from a witness for the School Board that on the morning in question before the accident happened he had turned on the lights in the dressing room and that after the occurrence of the accident the electric lights were still burning.
But the question of electric lighting vel non assumes no importance because we are satisfied from the expert evidence that even on a heavily-overcast day natural light amounting to 25 candle power enters the room by virtue of a frosted door and the windows over the toilets. Buse, an electrical engineer, testified that 10 candle power is sufficient.
It is not necessary to discuss whether LSA-C.C. art. 2322 has application because we do not think that the damage which may have befallen plaintiffs was due to any vice in the original construction of the school building per se. We have before us the evidence of two experienced architects, one of whom appeared on behalf of the plaintiffs and the other for defendant, and their testimony makes it certain that at the time the building was erected, 1936 or 1937, and at the present time, there was and is no provision of the Building Code of the City of New Orleans which prohibited or prohibits such a floor as that in the dressing room in question. Wilson, plaintiffs’ architect, could point to no Code violation but maintained that the two-level floor creates a dangerous situation. He admitted that such conditions are to be seen in some old buildings and he went on further to concede that some architects to the present day use such methods of construction. During the progress of the trial Wilson was asked by defendant’s counsel to make an inspection of and to give his views regarding the men’s toilet on the third floor of the Courthouse Building, and for the purpose of the inspection a short recess was declared by the judge. Wilson says he examined the toilet room and found in it conditions quite similar to those existing in the dressing room at the school!
Defendant’s architect, von Osthoff, does not regard the condition as hazardous although he stated that he would not advocate the installation of such a floor. He mentioned that he knows of toilets having unequal floor levels in certain buildings in New Orleans and named specifically Mai-son Blanche, Whitney National Bank and the National Bank of Commerce Buildings.
The Orleans Parish School Board was in no sense an insurer of Mrs. Steer. The most that can possibly be said is that the defendant owed Mrs. Steer only ordinary care, and the School Board certainly is to be absolved from liability if it appears it was without fault. From this record we could never say that there was any actionable negligence on the part of the defendant.
In view of the testimony respecting the visibility in the- dressing room, even assuming there was an absence of artificial lights, we can only say that we think that had Mrs. Steer utilized her sense of sight she would have been able to notice the inequalities in the floor and avoid being injured. Classes, both day and evening, are held at the Rabouin School and on an average of about 800 persons per day attend, and it is highly significant that except for Mrs. Steer’s accident, no other accident in the ladies’ dressing room has ever been reported during the 20 years of the school’s existence. This, we believe, demonstrates that the floor about which Mrs. Steer complains does not constitute a hazard.
Counsel for each side cite cases emanating from other jurisdictions which they *130 contend fully support their respective positions. The cited cases involve claims for damages resulting from injuries sustained in falls because of unequal floor surfaces or upon steps, but we need not resort to the decisions of the other jurisdictions for enlightenment because the Louisiana courts have spoken emphatically on the proposition before us and in a manner adverse to plaintiffs’ contentions.
In Givens v. De Soto Bldg. Co., 156 La. 377, 100 So. 534, 536, the patron of a theater was injured upon leaving her seat and stepping down from a platform elevated about 8 inches above the aisle. She claimed that there were no safeguards thrown around the said drop and that the dim light thereabout did not suffice for her to see it. The Court found that the theater was built by competent architects and was comparable to theaters in other cities, and there was no faulty construction and no negligence on the part of the theater operator in failing to light the floor at the point where the change of level occurred. The Court said:
“The question therefore is whether it was negligence on the part of the Saenger Company to fail to light the floor at the point where the change of level occurred. We do not think so.
“It is shown that many thousands of persons have entered and left this theater without another person having suffered a fall. Things were therefore apparently safe.”
The Court of Appeal for the First Circuit in Black v. American Mut. Liability Ins. Co., 37 So.2d 63, held that the maintenance of a 6-inch step up in a theater from the aisle to the floor level where the seats are located is not a structural defect which would support a personal injury action by a patron against the theater operator on the ground of negligence.
The Court of Appeal for the Frst Circuit held in Knight v. Travelers Ins. Co., 32 So.2d 508, that the construction of different floor levels with a step between them is not negligence unless a reasonably prudent person would not be likely to expect or see the step because of its character or location or surrounding conditions.
In Van v. Teche Lines, Inc., La.App., 164 So. 267, which has some analogy to the instant case, we said:
“ * * * The difference in elevation of three inches between the floor of the dressing room and that of the station itself does not, in our opinion, constitute any hazard to the occupants of the waiting room, and cannot be regarded as negligence. As was said in Ware Evangelical Baptist Society, 181 Mass. 285, 63 N.E. 885: It is matter of common observation that in entering and leaving stores, halls, railway car stations and platforms, office buildings, and other buildings, and places, and private houses, adjoining surfaces are frequently at different levels; and the difference in level has to be overcome by one or more steps, of greater or less height, or by some other device. The same thing happens in the interior of buildings and structures. We cannot think that such a construction is of itself defective or negligent.’ ”
And in Madere v. Tranchina, 62 So.2d 871, 874, this court said:
“ * * * The accident, if one did occur, happened at a place which was amply lighted, and the plaintiff by using ordinary care would have found no difficulty or trouble in stepping up from the toilet floor to the top of the sill. The operator of the establishment was not under the duty of furnishing a perfect or a foolproof step, but only such a step as could be ascended and descended in safety by the exercise of ordinary care.”
We agree with the conclusions of our brother below. The judgment is correct and it is affirmed.
Affirmed.