ELLIS, Judge.
Mrs. Mary F. Lester filed this proceeding seeking damages for severe bodily injuries sustained by her in a fall at the railway depot owned and operated by the defendant railroad at Addis, Louisiana on May 29, 1960. Mr. Lester joined his wife to recover the community medical expenses resulting from the injury. The trial court gave judgment for the defendant, dismissing plaintiffs’ suit at their costs and plaintiffs have prosecuted this appeal.
The facts disclose that the Lesters arrived at the Addis station about 5:30 P. M. to meet Mrs. Lester’s sister who was to arrive from El Paso on the 6:00 P. M. train. The Lesters entered the station waiting room to enjoy the air conditioning and while they waited, they talked with the ticket agent about rates for twenty or twenty-five minutes. Realizing that the train was almost due, they decided to wait for it outside and thus Mrs. Lester attempted to leave the waiting room through the only available door.
The entrance and exit to this station is through a screen door which swings to the outside and through a heavy inner door which swings to the inside. Both doors are suspended from the same side of the door frame, and both doors are equipped with automatic pressure devices so that they will close themselves.
The top step is about two inches below the threshold. There is a 7J4 inch drop to the lower step and another 7]/2 inch drop to the ground level. The top step is 12J4 inches wide and 48 inches long, extending beyond each side of the door. There is no landing on the outside on a level with the floor of the waiting room. A person leaving the waiting room steps out onto the top cement step, over which the screen door opens.
There were no eye witnesses to the accident other than the plaintiffs themselves. Mr. Lester testified that he opened the inner door and held it for his wife and that she pushed the outer screen door open herself. He only saw her “stumble” and could not state what caused his wife to fall.
When asked what caused her to fall, Mrs. Lester testified that the top step was not wide enough for her to put her foot on and that her right heel had caught on the threshold and caused her to trip and miss the narrow step. She complained in her testimony that the top step was so narrow she could not get her shoe on it and that there was such a distance between the top step and “the other one” that she just fell.
The defendants successfully proved through the testimony of their employees Ducote, Hebert and Bossier that, at the time of the accident, there were no defects in the doorway which resulted from wear and tear and that the doorway was in an adequate state of repair. It was further shown that there had been no prior accidents involving these steps, though the station had been in operation for twelve years^ No evidence was offered by the plaintiffs to contradict these facts.
Therefore, if plaintiff is to recover it is necessary that she show that the architectural design of the exit constituted continuing negligence per se. The defendant has denied that the exit design is improper and has alternatively alleged contributory negligence as a bar to recovery.
We are of the opinion that the basic design of the exit did not constitute negligence per se on the part of the railroad.
The owner of a building is required to exercise only ordinary care toward persons lawfully on his premises and is not an insurer. Grelle v. Patecek, La.App., 74 So.2d 349, and Lawson v. D. H. Holmes Co., Ltd., La.App., 200 So. 163.
Plaintiff relies on alleged violations of the National Building Code and the Building Exits Code to show negligence. These codes require that there be a landing at the top of stairways and steps at least equal in width to the swing of any door *467 opening over them and that the landing he on a level with the floor on the opposite side of the door. We are convinced that these codes were not legally in effect in Addis at the time the depot was constructed. No plans were presented to the State Fire Marshall and no building permits of any kind were required. The codes are, however, helpful to the court as an indication of the recommended building safety standards in current use in the building and architectural professions.
Architect Urban, who designed the building, and contractors Eaton and Marix testified for the defendant to the effect that, in their opinion, the code provisions above mentioned did not apply to a screen door which permitted one to observe the steps through the door itself.
There are a number of Louisiana cases dealing with situations of this type, all holding that variations in floor level are not per se negligence, especially if the plaintiff knew of the variation. Alexander v. General Accident Fire & Life Assurance Corporation, La.App., 98 So.2d 730; Van v. Teche Lines, Inc., La.App., 164 So. 267; Steer v. Orleans Parish School Board, La.App., 92 So.2d 128; Burdeaux et al. v. Montgomery Ward & Co., La.App., 192 So. 728; and Baker v. Hartford Accident & Indemnity Co., La.App., 136 So.2d 828.
In the case of Grigsby v. Morgan & Lindsey, La.App., 148 So. 506, the court found that the defect of construction was an improperly installed floor ventilator which left a small hole that had become filled with soft trash. The plaintiff’s heel caught in the hole and tripped her as she walked. Recovery was allowed and we are in accord with that holding, but we do not feel that that case is authority for the plaintiff’s contention that the plaintiff is relieved of a duty to detect conditions which are obviously unsafe and of which she had actual knowledge.
Plaintiff seeks to rely on several cases from other jurisdictions which under similar facts have held that certain types of steps were negligently designed. In particular is Skidd v. Quattrochi, 304 Mass. 438, 23 N.E.2d 1009 (1929) where the plaintiff looked through the window to one side of the door and saw automobiles for sale; then looked through the window on the other side of the door and saw girls working; then opened the door and fell down a flight of stairs. In that case the stairway was concealed and the court said, 23 N.E.2d at page 1011:
“The evidence discloses that the defendant left the door in question, which, as before pointed out, the plaintiff could reasonably asstime lad to the office and showroom, unlocked and unguarded. The stairway was steep and made dangerous by the absence of any landing at its top.” (emphasis ours.)
There are also several cases in Louisiana dealing with steps and stairways where the plaintiff has alleged negligence per se based on the design.
For example, in Gosselin v. Stillwell, La.App., 78 So.2d 235, an employee who was familiar with the stairway on which she fell was denied recovery. The court found that the stairway was not inherently dangerous to one familiar with it and using ordinary care, although it was steep, irregular in rise as between the two sections, and the treads were of various widths. The court quoted from Davis v. Buss Machine Works, 169 Mich. 498, 135 N.W. 303, at 304 as follows:
“It has long since been recognized that falling downstairs where the mishap was not imputed to unknown or concealed defects, belongs to that class of ordinary accidents which ought to be imputed to the carelessness or misfortune of the sufferer.”
In Bradberry v. Dispenza, La.App., 125 So.2d 441 the plaintiff-tenant of fourteen years residence slipped on wet wood steps which were slightly tilted forward to allow for drainage. The court denied recovery *468 and we quote from page 443 of the opinion as follows:
“ * * * the owner of a building is not required to furnish a foolproof step, but only such a step that can be negotiated in safety by the exercise of ordinary care. See Madere v. Tranchina, La. App.Orleans, 1953, 62 So.2d 871.”
In the case of Connella v. Hartford Accident & Indemnity Co., La.App., 119 So.2d 881, a factual situation much like the one at bar was presented. The plaintiff was a 78 year old woman who fell while leaving a flower shop. The steps in that case had a rise from only 3 to inches and the top tread was 26)4 inches wide. The Court found that these steps were safer than average.
Nor do we feel, in the instant case, that the presence of not more than a two inch drop between the threshold and the top step constituted negligence per se. This was a normal type of construction in constant use by contractors. The drop on plaintiffs’ own side residential entrance was shown to be a full step without a landing, but with an out-swinging screen door.
In photographs of the depot entrance introduced by the defendant, the initial drop appears inconsequential. In view of the countless persons who successfully used these steps during the twelve years preceding the accident, we cannot say that they were a safety hazard or that the defendant was negligent in designing them. We are mindful at this point of the language in Preuett v. State, La.App., 62 So.2d 686 as follows:
“There must always be a first accident, and the fact that this was the first does not militate against the conclusion of negligence.”
The court in that case did find, however, that there had been a number of occasions where motorists had been jostled and thrown about in their vehicles as a result of the same road defect.
Plaintiff, therefore, having failed either to show a defect in design or a failure to maintain in an adequate state of repair, the doorway in question, has failed to carry the burden of proof and consequently cannot recover.
Assuming in this instance, however, that the building code does correctly set forth the standard of care required of the defendant in this case, and that the design of the exit was per se negligence, we must emphasize that it is not every violation of the standard of care which is actionable. The plaintiff must, in all cases, prove that the violation complained of was the proximate cause of the accident. Gosselin v. Stillwell, La.App., 78 So.2d 235.
It appears to this court, and this view is supported by the testimony of Architect Urban and contractors Eaton and Marix that there is one primary reason for that provision in the building codes requiring a landing at least equal to the width of and on a level with the door swinging over it, in cases where a set of steps is concealed by a door. This is to provide a person sufficient time to realize, after opening the door, that he is about to descend a flight of steps. It appears obvious that where the door is transparent, the reason for the code requirement vanishes.
In the case at bar, the plaintiff fell when her right heel caught on the metal threshold and because she was unable to get her left foot down to straighten herself. We quote two passages from her testimony as follows :
“He pulled this door back, and I pushed the screen door wide open, and when I went to pick up my right foot I noticed that my heel kind of caught on that metal strip and when it came loose I didn’t have time to put my left foot on that little narrow top step.”
* * * * * ❖
“This step is so narrow and I couldn’t get my left foot down to straighten me out because it is so narrow, and this *469 step is so far away, and it just threw me out on my hip.”
The fall was in no way connected with the width of the top step, 12J4 inches, which is a commonly used tread width. Plaintiff implied in her testimony that had the top ■step been wider, she could have caught herself. This was certainly not proven, however, and this court will not engage in speculation as to whether or not plaintiff could have regained control had the top step been wider.
Therefore, it is clear that the violation •of the requirements of the building codes (assuming that they were violated and that the duty of ordinary care owed by the railroad in this case was thereby violated) was not the proximate cause of the injuries received by Mrs. Lester.
We are further convinced that the ■plea of contributory negligence urged by the defendant is well founded. Plaintiff was a lady of 75 years at the time of the accident, and, except for sporadic high blood pressure, was in good health, active and alert.
It cannot be said that Mrs. Lester did not realize that she was about to descend the steps for she had visited this depot many times before. Not more than 25 minutes before the accident she had used these very steps and had commented on them to her husband. Vision was not obstructed. The accident happened in broad daylight and all surfaces were dry and free from any foreign substances.
The defendant introduced photographs of the side entrance to the plaintiffs’ home. These photographs disclose that the entrance is very similar to the entrance to the depot. However, in the Lester’s entrance, the top step is a full seven to eight inches below the threshold and the tread is somewhat narrower than the 12¡4 inch tread at the depot. Obviously plaintiff was familiar with the use of the steps on her own home. Her failure to exercise due care in descending these steps at the depot was possibly the result of the excitement generated over the thought of the arrival of the plaintiff’s sister. Dr. Young, who treated plaintiff since 1958, testified that this was possible.
For all of these reasons, the judgment of the trial court is affirmed.
Affirmed.